### 35679. MOSES v. THE STATE.

Bowles, Justice.

George Robert Moses was indicted in Walker County during the November Term 1978, for the murder of his sister, Mackey Elaine Caldwell. Following a jury trial he was found guilty and sentenced to life imprisonment. Subsequently, he filed a motion for new trial which was overruled and he now appeals to this court assigning ten separate enumerations of error. The underlying facts will be recited in the opinion when necessary to a decision of the question presented.

1. Appellant contends that the trial judge erred in denying his motion for new trial as amended saying that the verdict is contrary to the evidence in the case because it clearly shows that he was insane at the time of commission of the homicide. He cites *Handspike v. State,* 203 Ga. 115 (45 SE2d 662) (1947); and *Wilson v. State,* 9 Ga. App. 274, 281 (1) (70 SE 1128) (1911). *Wilson* illustrates a case in which the act itself was so unreasonable and preposterous a sane person would not have undertaken such conduct. That court also determined there was no evidence of probative value to rebut the defendant's evidence of insanity. The court in *Handspike* concludes there was no evidence of sanity offered by the prosecution after defendant had proven insanity and a prior determination of insanity by the court. The decision concludes that the evidence presented overcame the presumption of sanity and as there was no evidence that the accused was sane at the time of the offense the conviction could not stand. For these reasons both cases are distinguishable from the instant case and have been distinguished many times. Compare *Boyd v. State,* 207 Ga. 567 (63 SE2d 394) (1951).

Under the law of this state an individual's sanity is presumed. Code Ann. § 26-606; *Longshore v. State,* 242 Ga. 689, 690 (251 SE2d 280) (1978); *Grace v. Hopper,* 234 Ga. 669 (217 SE2d 267) (1975) (cert. den. 423 U.S. 1066 (1976)); Grace v. Hopper, 425 FSupp. 1355 (M. D. Ga. 1977) revd., 566 F2d 507 (5th Cir. 1978). The presentation of evidence to the contrary does not automatically dissipate the presumption of sanity which exists by law. *Johnson v.*

*State,* 235 Ga. 486 (220 SE2d 448) (1975), distinguishing *Handspike v. State,* supra.

In this case the defendant presented a number of lay witnesses and also some expert testimony as to the defendant's insanity. Jurors are not bound by the opinions of either lay witnesses or expert witnesses as to the question of sanity and they may rely on the basic presumption existing under our law. *Carter v. State,* 225 Ga. 310 (168 SE2d 158) (1969); *Johnson v. State,* supra. The jury is free to reject expert testimony as to sanity and may find an accused sane even without positive testimony as to sanity. *Fields v. State,* 221 Ga. 307, 308 (1) (144 SE2d 339) (1965).

The witnesses introduced by defendant testified as to his condition at various times ranging from several months to eleven years before the homicide. None of these witnesses testified with regard to appellant's condition on or close to the night the homicide occurred. On the other hand, the state offered a number of witnesses whose testimony would indicate the defendant to be normal at or near the time in question, appeared to know who he was and where he was, was not having any fit or seizure, did not appear to be in shock, and would know right from wrong. Although the act itself was a horrible one, the jury was authorized to believe that theory of the evidence showing that the accused and the victim had spent the previous evening engaging in incestuous adultery and the homicide culminated out of jealousy or revenge because the victim was on this occasion in the company of another man.

Although an issue of insanity was presented to the jury they could under our law reject the testimony of the expert witness and rely on the general presumption of sanity as well as on the testimony of the witnesses who saw him on the night of the homicide and thus determine that he was not insane at the time. Considering the evidence in full we conclude a rational fact finder could easily have found appellant guilty beyond a reasonable doubt. See Jackson v. Virginia, — U.S. — (99 SC 2781, 61 LE2d 560) (1979).

2. (a) Appellant alleges the trial judge erred in charging the jury as follows: "I instruct you that the acts of

a person of sound mind and discretion are presumed to be the product of a person's will, but the presumption may be rebutted . . . I instruct you that a person of sound mind and discretion is presumed to intend the natural and probable consequences of his act, but the presumption may be rebutted . . . I give you this principle of law in charge, ladies and gentlemen, every person is presumed to be of sound mind and discretion, but the presumption may be rebutted."

Appellant contends that under authority of Sandstrom v. Montana, — U.S. — (99 SC 2450, 61 LE2d 39) (1979), the charge was unconstitutionally burden shifting. We disagree.

The charge to the jury must be viewed as a whole and not taken as single instructions in artificial isolation. Cupp v. Naughten, 414 U. S. 141, 147 (1973); *State v. McNeill,* 234 Ga. 696, 697 (217 SE2d 281) (1976). The trial court initially charged the jury on the presumption of innocence and on the reasonable standard of doubt. The court also charged the presumption of innocence remains with a defendant throughout the trial of the case. Subsequently, the court charged on the general presumption set out by statute in Georgia. See Code Ann. §§ 26-603, 26-604 and 26-606.

We have recently considered a similar charge on intent in *Skrine v. State,* 244 Ga. 520 (1979). We there held that such charges on intent where the jury was instructed that the presumption could be rebutted merely created a permissive presumption which was entirely rational. Thus, the charges on intent meet the requirements of Sandstrom, supra.

(b) Appellant also complains of the following charge: "Ladies and gentlemen, the State contends that the defendant is guilty of the offense of murder. The defendant contends that he is not guilty of the offense of murder and further contends that he is not guilty of the offense charged against him in the bill of indictment because at the time of the crime alleged he was insane, insane to the extent he did not know the difference between right and wrong. I charge you that once there is evidence contesting the defendant's sanity, the state must prove beyond a reasonable doubt that the defen-

dant had the requisite mental capacity to commit the crime."

It is permissible for the court to charge on the defendant's contentions. *Rubiano v. State,* 147 Ga. App. 142 (248 SE2d 207) (1978). Although charges that shift the burden of persuasion may be deemed erroneous, *State v. Moore,* 237 Ga. 269 (227 SE2d 241) (1976), the court noted, "Usual charges on presumptions are not considered 'burden shifting' charges, nor are charges that such presumptions may be rebutted." The charge in the case at bar does not fit within the prohibition set out by this court in *Moore,* as the charge here merely elaborates on the general presumption of sanity. Additionally, here the court specifically charged the jury, "A person will not be presumed to act with criminal intention." The charge merely illustrates that the defendant has the burden, once criminal intent has been shown, of illustrating his insanity before the state is required to rebut that showing beyond a reasonable doubt. *Durham v. State,* 239 Ga. 697 (238 SE2d 334) (1977). In such circumstances, the defendant does have the burden of establishing his insanity by a preponderance of the evidence. The charge in this instance when taken as a whole was not impermissibly burden shifting and this enumeration is without merit.

(c) Appellant complains of the following additional charge: "Now the standard by which his acts are to be judged is that of the conduct of a reasonable person." Appellant admits that this charge conforms with the pattern of jury instructions set out by the Council of Superior Court Judges of Georgia. This charge was approved in *Spivey v. State,* 241 Ga. 477 (246 SE2d 288) (1978). In the instant case, as well as in *Spivey,* the charge as a whole clearly gives adequate instructions to the jury that they are to consider the acts and the mental condition of the accused in determining whether or not he was insane at the time of the act. Appellant contends that *Spivey* is erroneous for saying that it diverts the jury's attention from the individualized conduct of the appellant to the conduct of some mythical, reasonable man. We disagree and we refuse to overrule *Spivey.* This enumeration is without merit.

(d) The following charge is also complained of: "Although the accused may not be able to evaluate the quality and consequences of his act to the same extent as a normal or average person, still that would be no defense nor excuse him if he is able to distinguish between right and wrong." This portion of the trial court's charge is also taken from the pattern of jury instructions approved by the Council of Superior Court Judges of Georgia on insanity. In the instant case the court went on to charge: "Now, in determining the issue of sanity or insanity, the jury may consider the acts and mental condition of the accused as revealed by the evidence, if any, before and after the commission of the alleged offense, and the declarations, if any, of the defendant made at the time of the alleged offense or reasonably close thereto as proof of his mental condition at the time of such alleged crime." Thus, the jury was well informed that they could view the surrounding facts and circumstances in making the determination in regard to appellant's sanity and in determining whether he could in fact distinguish "right from wrong." Appellant cites no authority in support of his contention. We approve the charge as given and conclude that this enumeration is without merit.

3. Appellant contends that the trial judge erred in failing to charge the jury two specific requests made in his behalf. These requests involve a theory of delusional compulsion.

We have held that in order for delusional compulsion to arise there "must be evidence that the defendant was laboring under a delusion, that the act itself was connected with the delusion and furthermore that the delusion would, if true, justify the act." *Graham v. State,* 236 Ga. 378, 379 (223 SE2d 803) (1976); *Brown v. State,* 228 Ga. 215, 217 (184 SE2d 655) (1971).

All of the witnesses who were in a position to do so testified that appellant did not appear to be having a seizure and to the contrary appeared to know who he was and where he was at the time of the shooting. We have read the transcript and conclude there was no evidence that appellant was laboring under a delusion, nor was there any evidence that the shooting was in any way connected with the alleged delusion. From this we find

that the evidence in the case would not have supported such a charge and the trial court did not err in refusing to honor appellant's request.

4. Appellant contends that the trial court erred in failing to grant his motion for mistrial on the ground that the state introduced into evidence the character of appellant for violence through testimony of a state's witness regarding a prior instance which occurred in another state.

State's counsel elicited from one of its witnesses the following testimony, "Bobby (appellant) had jumped through the double windows, just dove through them in front of a house." Subsequently, he testified the ambulance drivers "called the police and the police told him . . . me and my cousin sat on him until the police got there 'cause he was trying to get up and run and the police were telling him if he didn't go to the hospital they would take him to the hospital theirself [sic] and then take him to jail, and then he agreed to go to the hospital." To that point the defendant had not offered any evidence in regard to his character and he contends that the introduction of the evidence was harmful to him under the authority of *Bacon v. State,* 209 Ga. 261 (71 SE2d 615) (1952) and *Askew v. State,* 135 Ga. App. 56, 57 (1) (217 SE2d 385) (1975).

The apparent purpose of the state's evidence was to ascertain whether or not the witness had ever seen the appellant have a seizure. The evidence was relevant, as the main defense of appellant was based on his insanity. The appellant later introduced evidence relating to other seizures he had experienced in the past. The evidence at worst merely showed some of the physical characteristics during one of the previous seizures. All evidence does not become inadmissible merely because it incidentally puts a defendant's character in issue. *Whippler v. State,* 218 Ga. 198 (126 SE2d 744) (1962).

Nevertheless, the trial court thoroughly instructed the jury that they were to disregard the testimony about the events and about the police officer's statements to appellant at the time of the earlier seizure. The jury was told to completely disregard any of this evidence in reaching its verdict. Whatever harm, if any, that may

have occurred from its introduction was made harmless as the result of the judge's specific instructions. The trial court may exercise discretion in granting or refusing to declare a mistrial. We find no abuse of discretion here.

5. Appellant complains that the trial judge erred in admitting certain incriminating statements made by him to one of the investigators subsequent to the homicide on the grounds that his mental retardation and mental illnesses prohibited the statement from being freely and voluntarily given and that he was not properly informed of the criminal offense with which he would be charged. The appellant did not, therefore, make a knowing and intelligent waiver of his rights to remain silent and to have counsel during interrogation. He relies on the holding in Miranda v. Arizona, 384 U. S. 436, 444 (1966) in support of his position.

A Jackson v. Denno hearing was held at trial during which the investigating officer stated that he explained his rights to appellant from a form. He also testified that appellant said he understood these rights. The officer testified that appellant appeared to know who he was and where he was and the consequences of what was going on around him, and that appellant knew he was in jail over a shooting incident.

After hearing the evidence the court concluded that appellant was fully advised of his rights and that the state had carried the burden of proof in showing that the statement made was voluntary and that appellant understood his rights. The fact that defendant may have been suffering from some mental condition was not alone sufficient to exclude the confession. *Corn v. State,* 240 Ga. 130, 134-135 (240 SE2d 694) (1977). A trial court may be authorized to find that an individual is capable of waiving his rights even though there is evidence to the effect that he is moderately retarded. *Hurt v. State,* 239 Ga. 665 (238 SE2d 542) (1977). Retardation, and the extent of the same as presented by the ambit of the evidence in this case, is one of the facts that had to be determined by the trial court at the Jackson v. Denno hearing. Once the determination is made it will be approved by this court unless we find that it is clearly erroneous. *Hurt v. State,* supra. A statement made by an accused is not rendered

inadmissible solely because he has not been told why he was under arrest at the time of the making of the statement. *Davis v. State,* 240 Ga. 763, 766 (243 SE2d 12) (1978). The court's determination was not clearly erroneous in this instance.

6. Appellant contends the trial court erred in admitting into evidence certain photographs of the victim over his objections that they were highly prejudicial, inflammatory and served no useful purpose in the trial of the prosecutor's case. We have considered similar questions in a large number of cases and unless there are some very exceptional circumstances the photographs of the deceased are generally admissible to show the nature and extent of the wounds, the location of the body, the crime scene, the identity of the victim and other material issues. See *Godfrey v. State,* 243 Ga. 302, 304 (253 SE2d 710) (1979); *Stevens v. State,* 242 Ga. 34, 38 (247 SE2d 838) (1978); and *Lamb v. State,* 241 Ga. 10, 13 (243 SE2d 59) (1978). Doubtless, photographs of the victim are prejudicial to the accused, but so is most of the state's pertinent testimony. The pictures may be gory, but murder is usually a gory undertaking. We find no error.

7. We have examined the record and find no evidence that would require the court to charge appellant's request regarding the law of accident. In this case he pointed a gun at the victim and shot her. He did state that the victim (his sister) got between him and another man, thus indicating that he was not shooting at his sister. The fact remains that he would have been shooting at another person, and if so, would still be responsible for his sister's death. Compare *Williams v. State,* 232 Ga. 203, 206 (206 SE2d 37) (1974); *Fields v. State,* supra.

*Judgment affirmed. All the Justices concur.*

ARGUED JANUARY 15, 1980 — DECIDED FEBRUARY 5, 1980.

*William David Cunningham, William Ralph Hill, Jr.,* for appellant.

*W. M. Campbell, District Attorney, Arthur K. Bolton, Attorney General, Mary Beth Westmoreland, Staff*

*Assistant Attorney General,* for appellee.