## 61685. DELANO v. THE STATE.

McMurray, Presiding Judge.

Defendant was indicted and convicted of the offense of aggravated assault with a deadly weapon, a pistol, knowingly committed upon a police officer while such officer was engaged in the performance of his official duties. Defendant appeals, enumerating as error the sufficiency of the evidence. *Held:*

The state's evidence shows that the defendant was residing temporarily as a guest in the home of his sister and her husband until he got a job and found a place to live. One of the conditions of this arrangement was an agreement between the defendant and his host that he would not drink alcoholic beverages. After he had been living with his sister and brother-in-law for about 3 weeks he began drinking and was asked to leave. Defendant's brother-in-law urged him to leave, and about 11:00 p.m. told defendant that he must leave by midnight. When defendant indicated that he would take a walk to clear his head he left but did not return; so that when the brother-in-law heard shots fired 10 or 15 minutes later he became concerned that the defendant had committed suicide. After waiting about 30 more minutes the brother-in-law called the sheriff's department which dispatched a deputy. The deputy, who was armed and in uniform with badge and name plate thereon, went to the residence and looked but did not find the defendant. The deputy, on being told that the brother-in-law was going to be away from the home for a time, instructed him to turn off all the lights and lock the doors of the home before he left. The deputy promised to keep an eye on the house during the night. About 12:30 or 12:45 a.m., the deputy drove by the house and noticing a light on radioed his dispatcher to telephone a number at which the brother-in-law had indicated he could be reached and to ask him to return to the house to aid in determining who had entered the house. As there were circumstances suggesting that defendant had a weapon, a trooper with the Georgia State Patrol was called as a backup unit by the sheriff's department's dispatcher. The brother-in-law, state trooper, and the deputy met outside the home and entered together. Both the deputy sheriff and the state trooper were in uniform and under arms. The three advanced through the house calling out the defendant's name and calling for him to come out and talk. The three progressed to the bedroom in which the defendant had been staying. The light was on when they entered the room. They looked under the bed and started back out. At that time the deputy noticed a closet door behind the entrance door to the room. The state trooper and defendant's brother-in-law had already stepped out into the hallway when the

deputy reached behind the bedroom door to open the closet door and called out as had been done previously to defendant, "Come on out buddy, we want to talk to you . . . nobody's going to hurt you." The deputy had not drawn his gun when he opened the closet door, peering into the darkness of the closet. The defendant, who was in the closet, "shoved a pistol out through the crack in the closet door" into the deputy's face. The deputy slammed the door back, trying to hold it closed from a position beside the door and away from the line of fire through the door. Defendant forced the door open and "a slight tussle ensued." The deputy slipped and fell down and the defendant bent over him, pointing his weapon down into the deputy's face, saying to the deputy that "this is it." The deputy testified that at this time he was afraid that he was about to be shot. He further testified that he grabbed for the pistol and defendant said, "Don't do it." At this time the state trooper forced his way into the bedroom momentarily attracting the defendant's attention. The deputy attempted to ease his pistol out of the holster and defendant turned back to him and once again said, "Don't do it." The peace officers kept talking to the defendant and eventually convinced him to surrender his weapon and himself into custody. The surrendered pistol was found to be loaded with 5 rounds of live ammunition.

Aggravated assault with a deadly weapon is completed when a simple assault is committed by means of a deadly weapon. *Scott v. State,* 141 Ga. App. 848, 849 (1) (234 SE2d 685).

"A person commits simple assault when he either (a) attempts to commit a violent injury to the person of another or (b) commits an act which places another in reasonable apprehension of immediately receiving a violent injury." Code Ann. § 26-1301 (Ga. L. 1968, pp. 1249, 1280).

Defendant's action and the reactions of the deputy meet all the requirements for an aggravated assault; after a "tussle" with the deputy, the defendant bent over the deputy who was on the floor, pointed a loaded pistol into the deputy's face and stated to him, "This is it." The deputy testified that at that time he was in fear of being shot. See in this regard *Leach v. State,* 143 Ga. App. 598, 599-600 (239 SE2d 177). Although the defendant laid down his weapon without violence, the events preceding defendant's surrender as shown by the state's evidence authorized the jury to conclude that the aggravated assault occurred upon the deputy prior to the surrender.

Code Ann. § 26-1302 (Ga. L. 1968, pp. 1249, 1280; 1976, p. 543) provides for a more extensive sentence to be imposed for a conviction of the offense of aggravated assault upon a peace officer. Normally the offense of aggravated assault carries a sentence of not less than 1 nor more than 10 years. However, where a person knowingly commits

aggravated assault upon a peace officer while such peace officer is engaged in or on account of the performance of his official duties and thus commits the offense of aggravated assault upon a police officer, the sentence specified is for not less than 5 nor more than 20 years. The sentence imposed upon defendant in the case sub judice is 8 years (3 years to serve, with the remaining 5 years probated), therefore within the permissible sentence range for the offense of aggravated assault without regard to whether the victim was a peace officer and not constrained by the limits of the range of sentence which may be given in either situation. See *Mayfield v. State,* 153 Ga. App. 459, 462 (6) (265 SE2d 366). There is ample evidence of defendant's opportunity to recognize that his victim was a peace officer. Moreover, on direct examination the defendant admitted that "there was a police officer . . . a deputy . . . and he was laying [sic] there or sitting actually . . . he had his hand on his gun . . ."

After a careful review of the entire record and transcript we find that a rational trier of fact (the jury in the case sub judice) could reasonably have found from the evidence adduced at trial proof of guilt of the defendant beyond a reasonable doubt. *Driggers v. State,* 244 Ga. 160, 161 (1) (259 SE2d 133); *Moses v. State,* 245 Ga. 180, 181 (1) (263 SE2d 916); *Sanders v. State,* 246 Ga. 42 (1) (268 SE2d 628); *Jones v. State,* 154 Ga. App. 806, 807 (1) (270 SE2d 201).

*Judgment affirmed. Quillian, C. J., and Pope, J., concur.*

DECIDED APRIL 14, 1981.

*A. Frank Grimsley,* for appellant.
*Gary Christy, District Attorney, James E. Turk, Assistant District Attorney,* for appellee.