## 38284. MORROW v. THE STATE.

JORDAN, Chief Justice.

Henry Lewis Morrow was convicted in Paulding County of the murder of Tommy Engler, and was sentenced to life imprisonment. He contends on appeal that photographs of the victim's wounds should not have been admitted in evidence, and that the evidence supports a conviction for voluntary manslaughter but not for murder. We affirm.

1. The victim was killed by a slug fired from a shotgun. The photographs to which Morrow objected illustrate a single, substantial entrance wound on the victim's back and a massive exit wound on the victim's chest.

The pertinent portion of the objection was that the photographs were inflammatory and prejudicial. "Doubtless, photographs of the victim are prejudicial to the accused, but so is most of the state's pertinent testimony. The pictures may be gory, but murder is usually a gory undertaking." *Moses v. State,* 245 Ga. 180, 187 (6) (263 SE2d 916) (1980). We find nothing in this record tending to indicate that the general rule permitting the admission in evidence of photographs of the victim's wounds should not be applied. *Moses v. State,* supra, and cases cited therein.

2. The jury heard evidence from which the following could be

found as facts beyond a reasonable doubt. The victim, Tommy Engler, age 32, was the former husband of Connie Engler, age 31, and the father of two of her three young children. Morrow, age 20, was in love with Connie and wanted to marry her, but she was living with, and had expressed to Morrow her affections for, her former husband, Tommy.

On March 29, 1981, Morrow was admitted to the Paulding Memorial Hospital for an overdose of medication which he apparently had ingested in response to his being rejected by Connie. The attending physician testified that Morrow was suffering from an emotional disturbance resulting from a disagreement with, or loss of, a loved one, and that the drug dose he had taken was not lethal but instead could be termed a "sort of crying out for help gesture." Morrow was released after one day, and was advised to consult with a psychiatrist and to seek the companionship of additional people. The doctor was of the opinion that Morrow was suffering from emotional insecurity or immaturity.

On May 2, 1981, Morrow and a friend stopped at a local grocery store because they had noticed Connie's automobile in the parking lot. Tommy Engler and his children were sitting in the automobile. Morrow went into the store, talked with Connie for one or two minutes, then returned to the truck and drove off fast, "like he was mad," without saying anything to his friend.

Morrow drove to his friend's home, and when Tommy and Connie drove by he followed them up the road until Connie pulled over and stopped. Morrow and Tommy then had what Morrow's friend described as a loud conversation, following which Connie told Morrow that she still loved Tommy. Tommy was laughing or smiling through at least part of the conversation.

Morrow dropped his friend off at his friend's home, then went to his own home and returned with his father's shotgun. Several persons saw Morrow proceed toward and stop at the Engler driveway. They tried to encourage him to come back but, "He looked like he was in a world of his own. You couldn't get through to him."

At least six people were watching the events that next transpired. Morrow stopped his truck at the Engler driveway and stepped out, gun in hand. Engler walked down the driveway, but when he saw the shotgun he turned and started walking back up the driveway. Morrow fired one shot into the air. Moments later, he fired again, striking Tommy in the back with a single slug which literally exploded Tommy's chest cavity.

When Morrow had arrived at the Engler residence, Connie was dressing one of her children for a baseball game while Tommy was playing ball in the front yard with another of their children. Connie

stepped to the door when she heard the first shot, just in time to see Tommy walking up the driveway and being hit by the second shot.

While awaiting the police, Morrow inquired of a bystander who had walked over to the Engler residence after the shooting as to whether "the SOB" was dead. When the officers arrived, he admitted he had shot Tommy and said, "I wish I hadn't done it."

Witnesses testified that Tommy had not been armed and that he and Morrow had not been engaged in an argument and had not exchanged heated words at any time after Morrow drove up and stepped out of his vehicle carrying the shotgun.

The foregoing evidence is amply sufficient under the current legal standard to authorize the jury to find Morrow guilty of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 10, 1982.

*Kermish, Labovitz, Marcus, Brazier & Rosenberg, Stephen A. Kermish, David W. Davenport,* for appellant.

*William A. Foster III, District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries,* for appellee.