## 39061. RAMEY v. THE STATE.
## 39062. BREWSTER v. THE STATE.

HILL, Chief Justice.

Appellants Ramey and Brewster and co-defendant Ronnie Joe Criswell were found guilty of the murder of Michael Blackwell and of aggravated assault in the stabbing of Franklin Rivers. Defendants were each sentenced to life imprisonment for murder and consecutive terms for aggravated assault.

The five named men were inmate orderlies at the Georgia State Prison in Reidsville. Inmate orderlies are responsible for distributing meals to inmates who eat in their cells rather than in the prison dining hall. Appellants and co-defendant Criswell are white; the alleged victims are black. On September 24, 1981, as supper was being delivered to the cell block for distribution by the orderlies, an altercation erupted between the white orderlies and the black orderlies. The testimony of three guards showed that appellants and co-defendant Criswell attacked Rivers and Blackwell with home-made knives and a blunt instrument.

Rivers was stabbed 32 times but lived, while Blackwell was stabbed 16 times and died. Rivers testified that Ramey and Criswell stabbed him. The three defendants, who received no injuries, claimed self-defense. Defendant Brewster testified he took a knife away from Blackwell and that only he stabbed Blackwell. Ramey claimed he was knocked to the floor, lay there stunned, and never had a weapon. The medical examiner testified that wounds found on Blackwell indicated 2 or possibly 3 knives were used. Only one knife was recovered from the scene, but a witness testified he saw one of the defendants throw something up to the second tier of the cell block.

1. Defendants first contend the trial court erred in admitting a photograph of Blackwell taken after an autopsy on the ground it was spectacularly gruesome and did not clearly indicate the cause of death. They contend the photograph was used in an attempt to inflame and infuriate the jury. In particular defendants objected to the photograph because the victim's scalp had been cut from ear to ear and pulled forward and backward to permit the medical examiner to examine wounds to Blackwell's head. In the photograph Blackwell's face is covered with a bloodstained towel.

The introduction of repetitious photographs, particularly color photographs (including enlargements), of the victim of a murder, is frequently asserted in this court as being error. In some cases it appears that the photographer, like so many of us, took two pictures from every angle, to make sure of getting one. In many of those cases

it appears the prosecutor introduced all the photographs taken, even the duplicates. See *Florence v. State,* 243 Ga. 738 (4, fn. 1) (256 SE2d 467) (1979). Each of us has experienced the revulsion and animosity created by those gruesome photographs, feelings which jurors also must experience when shown such photographs.

Pictures of the deceased taken at the scene of the murder are bad enough; pictures of the deceased taken while an autopsy was in progress are even worse. See *Lamb v. State,* 241 Ga. 10 (2) (243 SE2d 59) (1978). Like duplicate photos, autopsy photos should be screened with particular care to determine their relevancy, if any, to the case at hand. *Florence v. State,* supra.

Although this issue is repeatedly raised, no new meaningful rule has been proposed by the defendant here or by the defense bar. We therefore adhere to the existing rule, which is: Photographs which are relevant to any issue in the case are admissible even though they may have an effect upon the jury. *Moses v. State,* 245 Ga. 180 (6) (263 SE2d 916) (1980); *Stevens v. State,* 242 Ga. 34 (5) (247 SE2d 838) (1978); *Edwards v. State,* 233 Ga. 625 (3) (212 SE2d 802) (1975); *Cash v. State,* 224 Ga. 798 (2) (164 SE2d 558) (1968).

Although the defendant argues that the wound to Blackwell's head was not the cause of death, cause of death is not the only relevant matter shown by a photograph. This autopsy photograph was one of three introduced at trial. The medical examiner used this photograph to show that Blackwell's wounds were made by different instruments. Wounds indicating that more than one knife was used corroborated witnesses' testimony that the three defendants attacked Blackwell. The existence of wounds made by different instruments also refuted Brewster's testimony that only he attacked Blackwell. The photograph was relevant to issues in the case and we find no error here.

2. Defendants sought to introduce evidence of racial tensions at the prison and of a racially-motivated riot earlier on the same day as Blackwell's death. Defendants maintain this evidence was crucial to establishing their self-defense theory because it would have shown their fears and the reasonableness of those fears.

The rule that evidence of prior difficulties between the victim and accused is admissible to show the state of feelings between the parties is inapplicable here. The alleged earlier confrontation was between inmates in a different building and involved none of these parties. The defendants' testimony raised the issue of self-defense. The trial court did not abuse its discretion in excluding this evidence, and we find no error here.

*Judgment affirmed. All the Justices concur, except Smith and Weltner, JJ., who dissent.*

*Stubbs & Branan, Jon Gary Branan,* for appellants.

*Dupont K. Cheney, District Attorney, Harrison W. Kohler, Assistant District Attorney, Michael J. Bowers, Attorney General, W. Davis Hewitt, Assistant Attorney General, Virginia H. Jeffries, Staff Assistant Attorney General,* for appellee.

WELTNER, Justice, dissenting.

I dissent to Division 1 of the majority opinion.

"Doubtless, photographs of the victim are prejudicial to the accused, but so is most of the state's pertinent testimony. The pictures may be gory, but murder is usually a gory undertaking." *Moses v. State,* 245 Ga. 180, 187 (6) (263 SE2d 916) (1980). This truth, undeniable, was reiterated by Chief Justice Jordan in *Morrow v. State,* 249 Ga. 1 (1) (287 SE2d 37) (1982). Earlier, Chief Justice Jordan, in *Florence v. State,* 243 Ga. 738, 741 (256 SE2d 467) (1979), offered the following cogent footnote: "According to the record 24 color photographs of the victim were introduced into evidence by the district attorney. At least a number of those could be said to be repetitious and merely cumulative. To this writer it appears that some prosecuting attorneys are taking license with the very liberal policy of this court in refusing to find reversible error in the use of photographs. The use of photographs should be limited to only those which are relevant and illustrative of the issues." The same author, in *Wood v. State,* 243 Ga. 273, 274 (253 SE2d 751) (1979) observed, relative to a similar objection, that certain photographs "could not be considered so spectacularly gruesome as to be classified as inflammatory." In *Holcomb v. State,* 130 Ga. App. 154, 155 (2) (202 SE2d 529) (1973) there appears this admonition: "Where photographs of a deceased are not spectacularly gruesome, and where they do clearly indicate the cause of death, it is well settled in this state that they are admissible in evidence. *Bryan v. State,* 206 Ga. 73 (55 SE 574); *Henderson v. State,* 227 Ga. 68 (179 SE2d 76). Where, as here, the cause of death is not in dispute, and the defendant admits to having fired the fatal bullet, a trial judge would often be well advised to sustain an objection to their admissibility on the ground that they add nothing of probative value to the record. Nevertheless, under the decided cases the head and chest shots here were properly admitted in evidence."

Now, once again, we have wrestled with the same problem, brandishing admonitions but declining to act with authority.

It is true that murder is a gory undertaking. It is true that photographs of such an undertaking will be gory because the truth

itself is gory. Nor may the author of carnage rightfully complain when the jury is exposed properly to an accurate depiction of his work.

This case, however, is entirely different. Already in the evidence are two full-size, full-color photographs of the deceased, displaying the upper torso and a Y-type incision made during autopsy. Both photographs depict multiple wounds, all of which were identified by expert testimony as *causae mortis.* There can be no rightful objection to these photographs.

The third photograph, however, displays not the work of the assailants, but of the autopsist. It is a color photograph taken of the top of the skull and left side of the body. The scalp has been slit from ear to ear, up over the head, and pulled forward down to the forehead and backward over the occipital, thus exposing a bald, white, and bloody skull.

While the court admitted this photograph on the theory that it displayed head wounds (and indeed it does), its introduction is, in my opinion, prejudicial and inflammatory to the extent of constituting reversible error.

Crimes done amidst the vilest of passions must be judged in deliberation and calm. The evidence against the accused in this case, *without* the objectionable photograph, is overwhelming as to every element of guilt, including the nature and extent of the victim's wounds. The introduction of the questioned photograph can be assigned to nothing but an effort to inflame the jury with the spectacularly gruesome. For, indeed, if the bare skull and hanging scalp of this victim is not spectacularly gruesome, we shall never see such a thing.

The rule in these matters should be something as follows: if a photograph is spectacularly gruesome, and if it is not evidence essential to the proof of the state's case, then it should be excluded on the ground that its inflammatory effect outweighs its evidentiary worth. I realize that the term "spectacularly gruesome" is purely a subjective standard, and that its application will, of necessity, depend upon the varying apprehension of trial judges. Nonetheless, there must be *some* rule, and, wanting a greater precision, it should suffice.

Unless and until our Court is willing to declare prejudicial error in such admissions, we will forever be plagued with the problems outlined by prior writers of both appellate courts of our State, and by Chief Justice Hill in the majority opinion. We will forever be required to temporize, to equivocate, and to apologize for our affirmances.

I am authorized to state that Justice Smith joins in this dissent.