71714. LOUMAKIS v. THE STATE.
(346 SE2d 373)

McMURRAY, Presiding Judge.

The defendant was indicted for armed robbery, aggravated assault and attempt to commit armed robbery and was tried before a jury in the Fulton County, Georgia Superior Court beginning on September 24, 1985. The evidence adduced at trial showed that on July 22, 1985, the defendant was working as a part-time security guard at the Atlanta Fulton County Stadium.[1] That evening the defendant was assigned to collect money which was located at various concession stands throughout the stadium and bring the money to a central counting room, which was guarded by another security guard, Officer N. J. Leslie.[2] Later that evening, the defendant announced that he had to leave early. However, instead of going home, the defendant changed out of his police uniform and dressed himself in street clothing. (The defendant hid his police uniform in a storage room at the stadium which was located approximately 75 to 100 feet from the counting room.) The defendant put on a motorcycle helmet, which concealed his face, armed himself with a pistol and went to the outer

---

[1] The defendant was a 15-year veteran of a city police department and was "moonlighting" as a security guard at the stadium.

[2] Officer Leslie was also a veteran police officer who was "moonlighting" at the stadium as a security guard.

chamber of the counting room where Officer Leslie was stationed. Officer Leslie testified, describing the events which transpired as follows:

"[Officer Leslie]. Well, I was talking on the phone to another police officer at the particular time. The door just sprang open and there was an individual with a gun pointed directly toward me. All I could see was a helmet, a motorcycle helmet. The individual had the gun pointed directly at me, motioned for me to lie down — hang the phone up. At this time I didn't hang the phone up because I was talking to another police officer. I laid the phone down hoping that he would say something. From that point the individual motioned for me to raise my hands above my head. I raised my hands. [Assistant District Attorney]. How far was this individual from you when he came through the door and pointed the gun at you? A. I would say approximately ten feet or less . . . Q. Then what? A. The individual kept the gun pointed at me, walked around to the rear of me, put the gun to the back of my head and disarmed me by reaching across and taking my police revolver out of my holster. . . . The subject moved a little bit to the left of me where I could see the gun pointed and motioned for me to lie down on the floor . . . I got on my knees. The individual reached for my handcuffs. He then grabbed one part of the handcuff and placed it upon my wrist. At this time I started shaking my wrists because I felt at this point I was going to die . . . Q. Did you decide to take any action as a result of the way you felt at that point? A. Yes. I knew that if I did not move at that particular time I was going to be shot in the back of my head. Q. So what did you do? A. I used a little police training that they had taught us. I jumped up, grabbed the right wrist, trying to clear the pistol. At this time a shot rang out and I knew I was shot in the left thigh . . . I [thought] that this is it, . . . either [I was] going to die fighting or [I was] just going to die lying here, so I hit the [defendant's] helmet with my fists, knocking both pistols out of the individual's hands. . . . At that point a scuffle began between the individual and myself. I felt at this time, seeing how there was no weapons involved, it was man against man and the struggle ensued and during the course of the struggle I reached across and saw my pistol lying on the floor and I grabbed my pistol and I started to strike the individual in the head with my pistol over and over again until I felt like I had regained control of the situation . . . . [Next] I had the subject to the point that I could possibly get on top and it worked. I had him dazed and I managed some way — all the specific details of the fight I can't be specific about — I managed to keep clubbing him in the back of the head with the pistol and I knew at one point that I had regained control of the situation and the helmet came off and I clubbed him once again and the subject kept trying to get up and at this point I tried to put him down again and

all he could say was, 'You got me, man. You got me.' . . . Q. What did you do after you struck this person in the head after the helmet came off? A. The individual kept trying to get up. At this time I felt like — I didn't know what I was going to have to do in order to maintain the situation, so I reached down and — the wrestlers refer to it as a full Nelson — I reached down and grabbed the individual and put my arms behind him and pinned his head down in this motion, keeping him like this and was struggling with him and I had him over the sink. At this time apparently someone had called the police — another officer, an Officer Blackwelder, came through the door . . . [and] got him [the defendant] at that point because I was dropping. I was completely exhausted. Q. What happened to you then? A. I just dropped on the floor. Q. Did the other officers arrive? A. Yes. There were several officers on the scene at this particular time."

From this and other evidence adduced at trial, the jury found the defendant guilty but mentally ill on all counts. The trial court denied the defendant's motion for new trial and this appeal followed. *Held*:

1. In his first enumeration of error the defendant contends that there was not sufficient evidence to support his conviction for armed robbery because the State failed to prove that he had the intent to commit theft, an essential element of the crime. See OCGA § 16-8-41. This argument is without merit. " 'It is not necessary for the state to show that appellant expressed an intent to rob in so many words, or declared a purpose to carry the intent into effect, for the jury to arrive at the conclusion he so intended. The intention may be gathered from the circumstances of the case as proved. In seeking the motives of human conduct, inferences and deductions may properly be considered where they flow naturally from the facts proved. (Cit.)' *Fears v. State*, 152 Ga. App. 817 (2) (264 SE2d 284)." *Chitwood v. State*, 170 Ga. App. 599, 600 (2) (317 SE2d 589). In the case sub judice, the evidence showing that the defendant relieved Officer Leslie of his gun and handcuffs was sufficient to convince the jury, beyond a reasonable doubt, that the defendant intended to commit theft. *Chitwood v. State*, 170 Ga. App. 599, 600 (2), supra.

2. In his second enumeration of error the defendant contends that the trial court erred in allowing the State to introduce evidence showing that the weapon used by the defendant was a gun seized during a 1973 drug investigation in which the defendant was one of the investigating police officers.

The defendant argues that this evidence was not relevant to any issue at trial and was introduced solely to prejudice the jury by placing the defendant's character in issue. In considering whether evidence of a prior criminal action is admissible the Supreme Court of Georgia in *Sport v. State*, 253 Ga. 689 (1) (324 SE2d 184), held "that evidence of prior criminal actions are admissible if relevant to the is-

sues in the present case. The state must show, however, that the defendant was in fact the perpetrator of the prior action and that sufficient similarity exists between the prior action and the offense charged. *Walraven v. State*, 250 Ga. 401 (297 SE2d 278) (1982). Once this foundation is laid, evidence of prior crimes is admissible to show motive, intent, plan, identity, bent of mind or course of conduct." In the case sub judice the State argues that the evidence of the prior crime was introduced to prove intent by showing the defendant's advanced preparation to commit the crimes charged. We cannot accept this argument. To say that the defendant's illegal appropriation of a gun eleven years earlier was done in contemplation of the crimes charged strains the realms of any reasonable person's imagination. We have reviewed the facts and find no logical connection between proof of the independent crime and proof of the crimes charged. However, we find admission of this evidence to be harmless, as evidence of the defendant's guilt was overwhelming. "It is highly probable that the error did not contribute to the jury verdict. *Stone v. State*, 167 Ga. App. 759 (307 SE2d 543) (1983)." *Hudson v. State*, 175 Ga. App. 878, 880 (2) (334 SE2d 735).

3. The defendant next contends that the trial court erred in failing to direct a verdict because the State failed to prove an essential element of the offense charged in Count 2 of the indictment. Count 2 of the indictment charged the defendant with aggravated assault upon "N. J. Leslie, a peace officer employed by the City of Atlanta Bureau of Police Services as a police officer, *who was at the time of said assault engaged in the performance of his official duties as such peace officer.*" (Emphasis supplied.) The defendant argues that the State failed to prove that Officer Leslie was engaged in performing his official duties while "moonlighting" as a security guard. This argument is without merit.

Although Officer Leslie was discharging the duties of his private employment on the night in question, he had an "official duty" to take action when the defendant breached the peace. *Duncan v. State*, 163 Ga. App. 148 (1) (294 SE2d 365). Consequently, the trial court did not err in failing to direct a verdict in favor of the defendant. The State proved every element of the crime charged in Count 2 of the indictment.

4. Next, the defendant contends that his conviction for aggravated assault merged with his conviction for armed robbery. We do not agree.

The evidence showed that the defendant had completed the armed robbery at the time he assaulted Officer Leslie. Consequently, the crimes were separate as a matter of fact under OCGA § 16-1-6. *Lambert v. State*, 157 Ga. App. 275 (277 SE2d 66); *Thomas v. State*, 237 Ga. App. 690, 693-694 (229 SE2d 458).

5. In his fifth and sixth enumerations of error the defendant contends that the trial court's charge on the presumption of sanity and the inference that a person is of sound mind and discretion was erroneous in light of the United States Supreme Court's ruling in *Francis v. Franklin*, 471 U. S. ___ (105 SC 1965, 85 LE2d 344). This argument is without merit. *Francis* does not invalidate Georgia's statutory presumption of sanity, it attacks a charge which instructs the jury that criminal intent may be presumed from the acts of the defendant. Such is not the case now before this court. In the case sub judice, the trial court correctly instructed the jury. The Supreme Court of Georgia, in *Keener v. State*, 254 Ga. 699, 702 (2) (334 SE2d 175), held "[t]he burden is on the state to prove that the defendant is guilty of the crime charged, including the requisite element of intent, beyond a reasonable doubt, [and that the] burden is on the defendant to prove that he is not guilty by reason of insanity by a preponderance of the evidence. This latter requirement [that every person may be presumed to be sane] is constitutional. [Cits.]"

6. Defendant contends that the trial court erred by charging the jury as follows: "Now, ladies and gentlemen of the jury, I further charge you that regardless of whether or not the defendant has any other defense and regardless of whether or not there is any other evidence in the record upon which a reasonable doubt as to his guilt could be based, proof of good character may, of itself, constitute such a defense in his behalf and you, the jury, overriding any amount of positive evidence pointing to the guilt of the defendant may, *if you see fit, acquit the defendant upon the reasonable doubt and proof of good character generated in your minds* and, in that event, the form of your verdict would be, 'We, the jury, find the defendant not guilty.'" (Emphasis supplied.)

In *Millwood v. State*, 174 Ga. App. 113 (1) (329 SE2d 273), this court specifically disapproved the above given jury instruction, reversing the judgment entered by the trial court because the charge negated that proof of good character of itself may constitute a defense to the crimes charged. However, notwithstanding argument to the contrary, we find *Millwood* distinguishable and the charge harmless error.

In *Millwood* the defendant's sole defense was that he did not commit the crime of child molestation because it was not within his character. In the case sub judice, there was no question that the defendant committed the acts which constituted the crimes charged. The defendant's sole defense was that he was insane when he committed the acts which constituted the crimes charged. Consequently, since the character evidence was not introduced as a complete defense to the crimes charged, but was only introduced to rebut the presumption of sanity and persuade the jury that the defendant was insane,

the erroneous charge did not adversely affect the jury's deliberations when deciding the pivotal issue before them as to whether the defendant had the mental capacity to form the intent to commit the crimes charged at the time of the incident. See OCGA § 16-2-3.

7. Defendant also contends that his conviction for attempt to commit armed robbery merged with his conviction for armed robbery. We do not agree.

Although both offenses occurred at the same place and at the same time and under the same circumstances, the object of the offenses was different and the victims were different. Officer Leslie's gun and handcuffs were the object of the armed robbery and the money in the counting room was the object of the attempt to commit armed robbery. Officer Leslie was the victim of the armed robbery and the concession company was the victim of the attempt to commit armed robbery. Consequently, the crimes were separate as a matter of fact under OCGA § 16-1-6. See *Hall v. State*, 155 Ga. App. 724 (1) (272 SE2d 578), and Division 4 above.

8. In his ninth enumeration of error the defendant contends that there was not sufficient evidence to authorize his conviction for the offense of attempt to commit armed robbery. The evidence adduced at trial showed that the defendant armed himself with a handgun, disguised himself and approached a room where he knew large sums of money were being compiled. This evidence alone was sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime, attempt to commit armed robbery. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Lambert v. State*, 157 Ga. App. 275, supra.

9. In his final enumeration of error the defendant contends that the trial court erred in failing to give the following request to charge: "Insanity is an affirmative defense that the accused must prove by a preponderance of the evidence. Where the Defendant raises the affirmative defense of insanity the burden is on the state to disprove the defense beyond a reasonable doubt." This is not the law in Georgia. In this jurisdiction "[i]t is well recognized that under the law of this state, an individual's sanity is presumed. Code Ann. § 26-606 [OCGA § 16-2-3]; *Moses v. State*, 245 Ga. 180 (263 SE2d 916) (1980); *Longshore v. State*, 242 Ga. 689, 690 (251 SE2d 280) (1978); *Grace v. Hopper*, 234 Ga. 669 (217 SE2d 267) (1975) cert. den. 423 U. S. 1066. The presentation of evidence to the contrary does not dissipate the presumption of sanity which exists by law. *Potts v. State*, 241 Ga. 67 (243 SE2d 510) (1978). Compare, also, *Johnson v. State*, 235 Ga. 486 (220 SE2d 448) (1975). . . . 'Jurors are free to reject the testimony of lay or expert witnesses as to the sanity of the accused, and to rely on the presumption of sanity.' *Durham v. State*, [239 Ga. 697, 699 (238 SE2d 334)]; *Fields v. State*, 221 Ga. 307 (144 SE2d 339) (1965);

*Moses v. State*, 245 Ga. 180 (1), supra." *Fulghum v. State*, 246 Ga. 184, 185-186 (269 SE2d 455). See *Brown v. State*, 250 Ga. 66, 67 (2) (a) (295 SE2d 727). Consequently, the trial court did not err in declining to give the above described request to charge.

*Judgment affirmed. Carley and Pope, JJ., concur.*

DECIDED MAY 22, 1986 —
REHEARING DENIED JUNE 6, 1986.

*Guy E. Davis, Jr.*, for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Benjamin H. Oehlert III, Assistant District Attorneys*, for appellee.