A94A2520. MOORE v. THE STATE.
(456 SE2d 708)

JOHNSON, Judge.

James Moore, Jr., was convicted of two counts of rape, kidnapping, aggravated assault and aggravated sodomy. He appeals from his convictions.

1. In two separate enumerations of error, Moore argues that, despite his having interposed insanity as a defense, the trial court failed to give a complete charge on insanity and mental illness as required by OCGA § 17-7-131 (b) (3). OCGA § 17-7-131 (b) (3) provides: "In all cases in which the defense of insanity is interposed, the trial judge *shall* charge the jury, in addition to other appropriate charges, the following: (A) I charge you that should you find the defendant not guilty by reason of insanity at the time of the crime, the defendant will be committed to a state mental health facility until such time, *if ever,* that the court is satisfied that he or she should be released pur-

suant to law. (B) I charge you that should you find the defendant guilty but mentally ill at the time of the crime, the defendant will be given over to the Department of Corrections or the Department of Human Resources, as the mental condition of the defendant may warrant." (Emphasis supplied.) At trial, rather than giving the charge as set out in the statute, the court stated: "Now, if you find the defendant insane at the time of the act or mentally ill at the time of the alleged act and your verdict so specifies, then the defendant will be committed to the proper facility until the Court is satisfied — and to be held as required by law until be — and ordered to be released as provided by law." Defense counsel excepted to the charge.

We agree with Moore that the court erred in giving this summary rather than using the statutory language. "The Code mandates that the charge set forth in OCGA § 17-7-131 (b) (3) [(A) and] (B) *'shall'* be given." (Emphasis in original.) *Spraggins v. State*, 258 Ga. 32, 33 (2) (364 SE2d 861) (1988). "[T]he failure to comply with a mandatory rule is presumptively harmful." (Citations omitted.) Id. at 33 (3). The legislature made the charge mandatory, perhaps to prevent courts from incorrectly summarizing the law and confusing the jury, as was the case in *Prophitt v. State*, 183 Ga. App. 332, 333 (1) (358 SE2d 892) (1987). In *Prophitt*, the trial court charged the jury in accordance with OCGA § 17-7-131 (b) (3), (A) & (B). After beginning deliberations, the jury asked the court to define the possible verdicts it would be authorized to return. The court responded by summarizing the statute. We found the court's instructions to be ambiguous with regard to the crucial issue of who would have custody and control of the defendant and who would ultimately have the authority to discharge him in the event he were found not guilty by reason of insanity, and held that the recharge constituted reversible error. Id. In this case, the court's charge failed to indicate who would have custody and control of Moore in the event he were found not guilty by reason of insanity or guilty but mentally ill. We also found reversible error in *Loftin v. State*, 180 Ga. App. 613, 615 (3) (349 SE2d 777) (1986), where the trial court instructed the jury that a state mental institution would have the ultimate power to order the release of an insanity acquittee, when that power actually rests with the trial court. (OCGA § 17-7-131 (b) (3) was not in effect at the time of Loftin's trial.) We stated that the court's summary was an erroneous statement of the law and the jury's verdict may have been influenced by its belief that the procedural safeguards were inadequate and that the defendant's dangerous propensities may not be given adequate consideration by a mental institution in determining whether release was appropriate. Id. Unlike in *Loftin*, the trial court in the instant case correctly stated that the power to order Moore's release rested with the court. However, we believe the jury in this case may have been, as in *Loftin*,

misled as to Moore's disposition were it to return an insanity verdict. In simply stating that the defendant would be committed to the "proper facility," the trial court failed to inform the jury that, depending upon the verdict, the proper facility might include the Department of Corrections. Such an omission may have influenced the jury's verdict. If the court misleads the jury as to the defendant's treatment and release if found insane, he has effectively been deprived of his insanity defense. See generally *Cranford v. State*, 186 Ga. App. 862, 863 (2) (369 SE2d 50) (1988).

In addition, the trial court's omission of the words "if ever" from the charge may have left the jury with the incorrect impression that the court would definitely be ordering Moore's release at some point; the "if ever" language implies the contrary. "Failure to give such a charge when required by statute is reversible error." *Guilford v. State*, 258 Ga. 253, 254 (3) (368 SE2d 116) (1988). Therefore, Moore is entitled to a new trial wherein the court is instructed to give the charge required by the statute.

2. Moore contends the trial court erred in not directing the jury to cease deliberations if it found the defendant lacked the ability to distinguish right from wrong at the time the act was committed. This enumeration lacks merit. The court charged the jury that if it found that the defendant was incapable of distinguishing between right and wrong at the time of the act, then the jury had the duty to acquit him because of insanity and cease deliberations. We find no error.

3. Moore's contention that the court erred in failing to instruct the jury that the state bore the burden of proving he was sane is without merit. In Georgia, an individual's sanity is presumed. *Loumakis v. State*, 179 Ga. App. 294, 299 (9) (346 SE2d 373) (1986). "[T]he United States Supreme Court has found no constitutional infirmity in a rule which places the burden upon the defendant to prove his insanity. [Cits.]" *Pope v. State*, 256 Ga. 195, 208 (16) (345 SE2d 831) (1986).

4. Moore claims the trial court erred in allowing the state to place his character in issue by inquiring into a prior assault he allegedly committed upon the victim, his estranged wife. Prior to trial, the state asked the court to rule on the admissibility of this evidence. Defense counsel objected to its admissibility, arguing that it was prejudicial and improperly placed Moore's character in issue. The trial court ruled the evidence admissible for the limited purposes of explaining the victim's conduct and the defendant's state of mind. Defense counsel apparently acquiesced in the court's ruling and made no objection when the evidence was introduced at trial. Moore's argument contained within this enumeration raises a "similar transaction" issue not raised in his objection below. Since no timely, specific objection was made at trial, it is treated as a waiver on appeal. *Brenneman*

*v. State*, 200 Ga. App. 111, 115 (5) (407 SE2d 93) (1991).

5. Moore's contention that the trial court erred in allowing the state to play a 911 audiotape of calls made by the victim and witnesses during the attack is without merit. At trial, Moore argued the tape was inadmissible because it was redundant, lacked probative value, and constituted hearsay.[1] The objection was properly overruled. "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." OCGA § 24-3-3. "Surrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discretion of the trial court. . . . A trial judge's determination that evidence offered as part of the res gestae is sufficiently informative and reliable as to warrant being considered will not be disturbed on appeal unless that determination is clearly erroneous." (Citations and punctuation omitted.) *Belcher v. State*, 201 Ga. App. 139, 140-141 (2) (410 SE2d 344) (1991). We will not disturb the trial court's ruling on this issue.

6. Moore argues the trial court erred in instructing the jury that a person is presumed to be "of sound mind and *distinction*" rather than "of sound mind and *discretion*" (see OCGA § 16-2-3). This error is not likely to recur on retrial. In any event, it is highly probable that the error did not contribute to the verdict. See generally *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

*Judgment reversed. Birdsong, P. J., Pope, P. J., Blackburn and Smith, JJ., concur. Beasley, C. J., McMurray, P. J., Andrews and Ruffin, JJ., dissent.*

BEASLEY, Chief Judge, dissenting.

I respectfully dissent because, contrary to the ruling in Division 1, the court's charge as to the authority responsible for the defendant's destiny under the possible verdicts did not constitute reversible error in this case. Appellant complains that the portion of the court's charge in this respect, which is quoted in the majority opinion, is an incorrect and incomplete statement of the law and is ambiguous and misleading.

Defendant had requested a charge on OCGA § 17-7-131 (b) (3) (A), which states the prescribed disposition for persons found not guilty by reason of insanity. He did not submit a request for OCGA § 17-7-131 (b) (3) (B), which provides the disposition for a person found guilty but mentally ill. It is apparent from the submitted

---

[1] Moore's objection that no proper foundation was laid was not raised below and therefore will not be considered on appeal. See *Hunter v. State*, 202 Ga. App. 195, 197-198 (3) (413 SE2d 526) (1991).

charges, especially Request No. 9, and the discussion at the charge conference, that defendant did not particularly want such a charge because he was afraid that if the jury found he was mentally ill at the time of the crime, it would find him guilty but mentally ill instead of not guilty by reason of insanity. Although he agreed with the court that "guilty but mentally ill" was one of the verdicts the jury could consider, he thought the charge would confuse the jury. He acknowledged that it was in the pattern charge book. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 2d ed., p. 60.

Defendant reminded the court of the statutory language and the court indicated that it would give the substance of OCGA § 17-7-131 (b) (3) (A) and (B), telling the jury that if it finds defendant was insane or mentally ill at the time of the act, he would be taken and handled as required by law.

The court gave a lengthy charge on insanity and mental illness, the distinction between the two, the test to be applied in determining the existence of each, and the verdict which should be entered upon a finding of either one. It tracked the charge in Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 2d ed., pp. 55-61, omitting the inappropriate charges on delusional insanity and mental retardation and the paraphrases of OCGA § 17-7-131 (a) (3) (A) and (B).[2] At a logical point near the end of the instructions on this whole subject, the court gave the charge at issue. In it, the court explained that if either verdict was returned, the defendant would be committed to "the proper state facility *until the Court*" is satisfied and orders him released in accordance with the law.

After conclusion of the jury instructions, defendant objected to the charge enumerated as error: "[W]hen the Court charged the jury down here that, if — if they found — sort of like a sideline, if you find him not guilty by reason of insanity or mental illness — I don't think mental illness is in that statute — you told them they would be committed until the Court figured out what to do with them. That's not in the statute either. That's in the law, but it's not in the statute that's supposed to be charged to them. They're just supposed to be told that the defendant will be committed to the Department of Human Resources for further evaluation."[3]

The Supreme Court reversed the conviction in *Spraggins v.*

---

[2] The pattern charge for subsection (A) is: "If this [not guilty by reason of insanity] is your verdict, the defendant will be committed to a state mental health facility until the court is satisfied that the defendant should be released under the law." The pattern charge for subsection (B) is: "If that [guilty, but mentally ill] is your verdict, the defendant will be given over to the Department of Corrections or to the Department of Human Resources, as the mental condition of the defendant may warrant." Id. at 58, 60.

[3] Mental illness *is* in the statute, as subsubsection (3) (B), and it is that provision which involves the Department of Human Resources.

*State*, 258 Ga. 32 (364 SE2d 861) (1988), because the trial court did not give the jury instruction mandated by OCGA § 17-7-131 (b) (3) (B) concerning the dispositional consequences of a verdict of "guilty but mentally ill," of which mental condition there was evidence at trial. The trial court did give OCGA § 17-7-131 (b) (3) (A) regarding insanity. The Supreme Court applied the rule that, since the language of the statute is mandatory, "the failure to comply with a mandatory rule is presumptively harmful." Id. at 33. It considered the purpose of a charge on subsection (B) and concluded that it was not fulfilled. The purpose "is to ensure that the jury understands that a verdict of guilty but mentally ill does not mean that the defendant will be released." Id. at 34. The Court found that, since the jury was not so informed and the prosecutor's argument strongly implied that such a verdict would result in defendant's release, the presumption of harm was not overcome.

The Court pointed to *Loftin v. State*, 180 Ga. App. 613, 615 (3) (349 SE2d 777) (1986), for comparison. In that case, instead of the problem being a prosecutor's misleading argument, the trial court itself instructed the jury that on a verdict of not guilty by reason of insanity, the defendant could be released by a state mental institution after examination. This court ruled that the statement was clearly erroneous because "[t]he ultimate power to order the release from a mental institution of an insanity acquittee is one which rests, not in the institution, but in the trial court." Id. This is so, we explained, in that "[t]he trial court is entirely free to reject the recommendation of the staff of the institution." Id. A new trial was ordered because this court could not be certain the jury understood that if it found defendant not guilty of the homicide by reason of insanity, there was the procedural safeguard of a judicial determination that it was safe to release her, before any release occurred, not merely a mental institution determination.

In *Guilford v. State*, 258 Ga. 253 (368 SE2d 116) (1988), a few months after *Spraggins*, the Supreme Court reversed the conviction and required a new trial because the trial court failed to give the dispositional charge relating to a verdict of not guilty by reason of insanity, OCGA § 17-7-131 (b) (3) (A).[4] The authority cited is *Spraggins*. At that time, the prescribed charge when the defense of insanity was interposed was that "should [the jury] find the defendant not guilty by reason of insanity at the time of the crime, this court will maintain custody and control of the defendant until the court is satisfied that the defendant is not a danger to himself or to others." Id. at

---

[4] Subsubsection (3) (B) was not involved, but the same would apply to it. *Spraggins*, supra at 33.

254.

The year before, in *Prophitt v. State*, 183 Ga. App. 332 (1) (358 SE2d 892) (1987), this court held that, although the trial court charged the jury OCGA § 17-7-131 (b) (3) (A) and (B), it erred in a recharge when the jury asked for a " 'brief definition' " of possible verdicts. As pertinent to the issue on appeal, the trial court attempted to condense by instructing that " 'a verdict of not guilty by reason of insanity would discharge (the appellant) from the offense charged, (and) he would be committed to the Department of Human Resources until he is no longer a danger to himself or others." We concluded that this was "at best ambiguous with regard to the crucial issue of who would have custody and control of the appellant and who would ultimately have the authority to discharge him in the event he were found not guilty by reason of insanity. . . ." Id. at 333. This is precisely in line with what *Spraggins* later held.

In the month following *Spraggins*, this court decided *Cranford v. State*, 186 Ga. App. 862 (369 SE2d 50) (1988), a case involving the defense of mental illness but not insanity. The court rejected appellant's contention that he was entitled to a jury charge on *sentencing* if he should be found guilty but mentally ill. In support of his contention, Cranford cited *Prophitt*, supra; *Loftin*, supra; and *Price v. State*, 179 Ga. App. 598, 601 (1) (347 SE2d 608) (1986). We distinguished them as holding that instructions on the *consequences* of a verdict of insanity or mental illness must not mislead the jury into thinking that defendant would be released outright. "The error in those cases," we said, "was in either allowing the jury to compromise by finding that defendant did not know right from wrong or suffered a delusional compulsion and returning a verdict of guilty but mentally ill, or in the court's misleading the jury as to defendant's treatment and release if found insane, thereby depriving him of his insanity defense." Id. at 863. Cranford acknowledged that he could not prove insanity, and he did receive an instruction on the guilty but mentally ill verdict. We held that "[h]e was not entitled to an instruction on the sentencing options of that verdict, as that would have no bearing on his guilt or innocence. [Cit.]" By continuing to recognize that it would be error to mislead the jury as to the consequences of finding no guilt by reason of insanity or guilt but mental illness, our view was in conformity with *Spraggins*, although it was not cited.

Since these cases were decided, the statutory provision has been materially changed with respect to subdivision (A). As it applied in all the cases cited above up through *Guilford*, it read: "I charge you that should you find the defendant not guilty by reason of insanity at the time of the crime, this court will maintain custody and control of the defendant until the court is satisfied that the defendant is not a danger to himself or to others." Now it reads, as relates to Moore's case:

"I charge you that should you find the defendant not guilty by reason of insanity at the time of the crime, the defendant will be committed to a state mental health facility until such time, if ever, that the court is satisfied that he or she should be released pursuant to law."

No longer is the court to instruct that *it* will maintain custody and control of defendant, even though it will retain legal control; literally taken, the instruction is misleading because an insane acquittee is sent to and detained in the custody of a state mental health facility selected by the Department of Human Resources for evaluation and report to the court which retains jurisdiction. OCGA § 17-7-131 (d). Thereafter the trial judge decides whether the person is to be released or committed to the Department of Human Resources for involuntary treatment. OCGA § 17-7-131 (e). An acquittee so committed may be discharged from Department of Human Resources custody only by the committing court, in accordance with OCGA § 17-7-131 (f).

The key thread running through all of these cases, and subsection (b) (3) of the statute, is that the *court* will decide if and when a defendant who the jury finds was insane or mentally ill at the time of the crime will be released. The jury is to be disabused of any fear that such a person will be released outright or will be released upon the judgment of mental health authorities. The jury is to be assured that the trial court itself, which the jury knows has the sentencing power, will retain control of the question of release.

That is precisely what the court charged in Moore's case. After having already described at length the legal definitions of insane and mentally ill and the verdicts appropriate for each, should one or the other be found, the court instructed the jury that if it found one or the other, the defendant would be committed to the proper state facility until the court was satisfied he should be released as provided by law.

It is true that the court did not use the words of the Code. It did not say that defendant would go to a state mental health facility if acquitted by reason of insanity or to the Department of Corrections or the Department of Human Resources if convicted but found mentally ill by the jury. That would be fairly confusing, because the jury would not necessarily know that the state mental health institutions are under the aegis of the Department of Human Resources. It would also be misleading, because subsection (B) does *not* advise that a defendant found guilty but mentally ill will not be released without court order. Yet that would be the ultimate result. OCGA § 17-7-131 (g). Further, charging in the precise words of subsection (B) is obtuse, because a jury would not know why defendant would go to Corrections instead of Human Resources or vice versa, or who would decide. Which state agency or institution is given physical custody of defendant is not the jury's concern; it is the trial court's. OCGA § 17-7-131

(g). Yet the charge implicates those two departments of state government.

What *is* the jury's concern is that, should it find that defendant was insane or mentally ill when committing the act, defendant would not be released without court order. Of that it was assured in Moore's case. He was not deprived of his insanity defense or of the defense of mental illness, which he eschewed but was permitted anyway as an alternative to the more ominous verdict of guilt outright. The court's instruction, particularly taken in the context of its entire charge on the defenses and the alternative verdicts, fulfilled the judicially-recognized purpose of the legislated jury charge in OCGA § 17-7-131 (b) (3). For this reason, I respectfully dissent.

I am authorized to state that Presiding Judge McMurray, Judge Andrews, and Judge Ruffin join in this dissent.

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 31, 1995 — 

*Daniel B. Kane*, for appellant.
*Stephen F. Lanier, District Attorney, C. Stephen Cox, Assistant District Attorney*, for appellee.