## COMMONWEALTH vs. DARRELL ENGRAM.

No. 95-P-2013.

Hampden. September 18, 1997. - November 13, 1997.

Present: BROWN, SMITH, & LENK, JJ.

*Identification. Practice, Criminal,* Instructions to jury. *Witness,* Credibility.

In the circumstances of the trial of indictments for armed robbery and armed
    assault with intent to rob, involving three incidents in one evening and five
    identifying witnesses, all of whom described the robber as having a
    problem with one eye, the judge did not abuse his discretion in refusing to
    give a requested instruction on cross-racial identification as bearing on the
    reliability of the identifications. [805-808]

Error, if any, at a criminal trial, in the admission of certain Commonwealth
    rebuttal testimony and prosecutorial comment thereon, did not create a
    substantial risk of a miscarriage of justice. [808]

INDICTMENTS found and returned in the Superior Court Depart-
ment, four on June 17, 1993, and one on September 14, 1993,
respectively.

The cases were tried before *Daniel A. Ford,* J.

*Brownlow M. Speer (Jonathan R. Elliott* with him) for the
defendant.

*Jane D. Montori,* Assistant District Attorney, for the Com-
monwealth.

SMITH, J. On December 9, 1993, a jury found the defendant
guilty on two indictments charging armed robbery, one indict-
ment charging armed assault with intent to rob, and two indict-
ments charging a threat to commit a crime, namely murder. The
indictments arose out of armed robberies of the Palm Cafe and
Johan's Restaurant and the attempted armed robbery of VFW
Post 70, a private club located around the corner and about a
block away from the Palm Cafe, during the evening of May 18,
1993, in downtown Springfield. On appeal, the defendant raises
two issues: (1) that it was an abuse of discretion for the judge

to refuse the defendant's request for an instruction that the jury could consider the cross-racial nature of the identification in determining the reliability of the victim's identification of the defendant, *Commonwealth* v. *Hyatt*, 419 Mass. 815, 818-819 (1995); and (2) that rebuttal testimony resulted in allegedly improper comment by the witness on another witness's credibility and improper argument by the prosecutor.

The bartender at the Palm Cafe, the bartender at the VFW Post, and the manager at Johan's Restaurant each saw the robber face-to-face at the time of the incidents, separately identified the defendant as the robber from photographic arrays, and also identified the defendant in court. In addition, two other individuals, who were sitting at the bar at the VFW Post during the attempted robbery, made in-court identifications of the defendant. One of the patrons had previously identified the defendant from a photographic array; the other had not been able to identify the defendant from the photographic array shown to him by the police. The bartenders at the Palm Cafe and the VFW Post and one of the VFW patrons told the police that the perpetrator had something wrong with his left eye; the manager at Johan's Restaurant or one of the witnesses told the police that the robber had a "lazy" eye. On the following day when the defendant was arrested, a police officer noticed that one of the defendant's eyes did not open as much as the other.

The defendant presented a defense of alibi and mistaken identity. The alibi defense was presented through Deborah Avery, the mother of the defendant's children; the defendant's close friend, Perry Dancy; and his cousin, Eugene Gasque. The defendant's alibi was that he was at the home of Deborah Avery on the evening of May 18, 1993. At approximately 7:00 P.M., Perry Dancy arrived at Ms. Avery's house, and, between 7:30 and 8:00 P.M., the defendant and Dancy went to the liquor store to buy some beer. They returned from the liquor store in approximately five or ten minutes with some beer and with the defendant's cousin Eugene Gasque, whom they had met on the way to the store. The men sat on Ms. Avery's porch drinking beer and smoking cigarettes for the remainder of that night.

1. *Requested cross-racial identification instructions.*[1] At the charge conference, the defendant submitted his written request

[1]The Commonwealth points out that there is nothing in the record to identify the races of the witnesses who identified the defendant prior to trial. The defendant's brief states that "all three of these completed or attempted robber-

for jury instructions, including the following instruction on cross-racial identification:

"6. IDENTIFICATION - Interracial

Interracial identification is particularly susceptible to error. This is true because individuals often are struck only by racial characteristics and are less likely to observe and remember the more subtle details of appearance in a member of a different racial group. Testimony relating to an interracial identification must be received with caution and scrutinized with care."

The judge ruled that he would not be giving the jury the requested instruction on cross-racial identification but would be giving "the standard identification charge." The judge then charged the jury pursuant to the standard instruction from *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979), as supplemented by *Commonwealth* v. *Pressley*, 390 Mass. 617, 619 (1983), and modified by *Commonwealth* v. *Cuffie*, 414 Mass. 632, 640-641 (1993). On appeal, the defendant claims that the judge abused his discretion when he refused to give the requested instruction.[2] *Commonwealth* v. *Hyatt*, 419 Mass. at 818-819. The defendant argues that (1) all three of the incidents were brief occurrences and (2) there was no corroborative evidence supporting the eyewitness identification. In regard to the latter point, the defendant contends that the witnesses described the perpetrator as wearing a distinctive striped shirt; there was no evidence that the defendant had ever worn or possessed such a shirt. The perpetrator was observed riding a bicycle away from the scene of the last robbery; there was no

---

ies were brief occurrences in which the white victims were fleetingly confronted by a black stranger pointing a handgun at them." At argument, it was agreed that the identifying witnesses were white.

[2]The defendant did not object to the judge's ruling at the charge conference, nor did he object after the jury was charged to the failure of the judge to give the cross-racial identification instruction. The Commonwealth argues that, because counsel failed to object, we should consider the issue under the substantial risk of a miscarriage of justice standard. We believe that the matter is covered by *Commonwealth* v. *Biancardi*, 421 Mass. 251, 254 (1995), where the court stated, "In this case, there was no need for a postcharge objection, where the judge had given an instruction that was inconsistent with the defendant's request. There was no reasonable prospect in the circumstances that, on objection, the judge would have repudiated his stated position."

evidence that the defendant ever owned or rode a bicycle. The perpetrator made off with $3,500 in cash from the last robbery; when the defendant was arrested the next morning, he had sixty-five cents on his person.

In *Commonwealth* v. *Charles*, 397 Mass. 1, 8 (1986), the court held that the judge acted within his discretion in denying a request for an instruction to the jury that they could consider the cross-racial nature of the white victim's identification of the African-American defendant in determining the reliability of that identification. In *Commonwealth* v. *Hyatt*, *supra*, the court stated that the judge did not abuse his discretion in declining to give a cross-racial identification instruction where "the victim was terrorized for fifteen to twenty minutes in broad daylight and forced into a face-to-face confrontation with her assailant." *Id.* at 818.

Here, each identifying eyewitness, without any evidence of prompting from the police, described the robber as having a problem with one of his eyes; the individuals each described the areas in which they initially saw the robber as well lit; all of those individuals' descriptions of the incidents disclosed that they were in close proximity to the robber at the time each robbery was being committed; and four of the five individuals selected the defendant's photograph from photographic arrays.[3] In addition, all of the witnesses who identified the defendant as the perpetrator testified at the trial that the defendant appeared to be heavier than when they saw him on May 18. The defendant testified that he indeed weighed more than he did when he was arrested on May 19. Finally, the jury were instructed properly on identification, honest mistake in identification, and the Commonwealth's burden of proving the defendant's identification beyond a reasonable doubt.

We repeat, however, the words that the court used in *Commonwealth* v. *Hyatt*, 419 Mass. at 819: "Nothing we say here is intended to preclude a judge in the exercise of discretion from instructing a jury that, in determining the weight to be given eyewitness identification testimony, they may consider the fact of any cross-racial identification and whether the identification

---

[3] One had initially failed to select the defendant but did so from a subsequent array.

by a person of different race from the defendant may be less reliable than identification by a person of the same race."[4]

2. *The rebuttal testimony.* After the defendant's alibi witness testified, the Commonwealth called as a rebuttal witness, a police officer who had testified during the Commonwealth's case as to his interviews with the alibi witnesses. The defendant claims that the officer was permitted to comment on the credibility of an alibi witness's testimony, his testimony contained hearsay, and the prosecutor impermissibly commented on an alibi witness's testimony. There was no objection to any of the claimed errors.

We have reviewed the record and do not perceive any error. In any event, if there was error, it did not create a substantial risk of a miscarriage of justice.

*Judgments affirmed.*

---

[4]This case was tried after *Charles* but before *Hyatt.* In the period between these two decisions we decided *Commonwealth* v. *Horne,* 26 Mass. App. Ct. 996, 999 (1988), in which we stated that the Supreme Judicial Court had rejected the giving of a cross-racial instruction in *Commonwealth* v. *Charles,* 397 Mass. at 8. We were in error in stating that the court had *rejected* the giving of a cross-racial identification instruction as the court pointed out in *Commonwealth* v. *Hyatt,* 419 Mass. at 818 n.1. However, the trial judge did not have the benefit of the Supreme Judicial Court's decision in *Hyatt.* Nevertheless, it appears that the trial judge was aware that it was within his discretion to decide whether to give the instruction.