COMMONWEALTH *vs.* HERVE JEAN-JACQUES. No. 97-P-1233. June 30, 1999.
*Practice, Criminal,* Instructions to jury. *Identification. Evidence,* Identification, Consciousness of guilt.

Herve Jean-Jacques was convicted by a jury of armed assault with intent to rob and assault and battery with a dangerous weapon. On the evidence, the jury were warranted in finding that at about 9:30 P.M. on Washington Street in Somerville a man, striking from behind, smashed a lemonade bottle over the head of Peter Grace. A collaborator of the assailant demanded Grace's wallet and reached for it. Grace was not only able to push the second man's hand away but managed to give the muggers the slip by a feint to the side, a sprint across Washington Street, and then a dash to the nearby Somerville police station. The two men wore dark denim pants and black or navy blue T-shirts. A witness to the mugging at a distance of about twelve feet, Valérie Lopes, gave roughly similar descriptions of the assailants and added the information that the T-shirt one man was wearing sported, in white or cream color, the legend "Guess." At the police station, Grace gave a description of his assailants and within two minutes of a radio transmission about the mugging, two police cruisers (each with one officer in it), converged on the vicinity of the assault and spotted two men answering the descriptions Grace had given. The men were out of breath and sweating profusely, although it was a cool, early summer (June 16) evening. The defendant wore a black T-shirt with "Guess" in white on it. Each of the arresting officers took one of the men into custody and to the police station. There Grace identified Shiguan Brown, a codefendant, as the man who smashed the bottle over his head and identified the defendant as the accomplice who had demanded his wallet. Those identifications occurred about one-half hour after the attack. At the time, Grace was 100% certain about his identifications.

Several days later, Grace received a summons to the Somerville District Court containing the names of the accused defendants. The name Herve Jean-Jacques caught Grace's attention and caused Grace to question the certainty of his identification. Surely, Grace reasoned: a man with the name Jean-Jacques must be a French speaker; speakers of French are civilized; and it was shocking that a French speaker would commit so coarse and violent an act. For that reason and because he had begun to wonder whether his memory was playing him false as to the color of the T-shirt (was it, perhaps, white) one of the attackers had worn, he confided to counsel for Jean-Jacques that he had now calibrated the certainty of his identification down to sixty percent.[1] He voiced his uncertainty at a dangerousness hearing [G. L. c. 276, § 58A] on August 3, 1995. At trial, on January 4, 1996, Grace made an in-court identification of Brown as the man who had hit him, but expressed uncertainty that the defendant was the man who had demanded his wallet.

1. *Denial of instruction on cross-racial identification.* Grace is white and the defendant is black. The defendant requested, and the judge denied, an instruction to the effect that the jurors might consider that it is more difficult to identify a member of another race than a member of one's own. There have been laboratory studies tending to demonstrate that persons are better at observing identification markers in their own race. See Johnson, Cross-Racial Identification Errors in Criminal Cases, 69 Cornell L. Rev. 934, 938-941 (1984). Our cases have left to the discretion of the trial judge whether to give juries a cross-racial identification instruction. *Commonwealth* v. *Hyatt*, 419 Mass. 815, 818-819 (1995). *Commonwealth* v. *Engram*, 43 Mass. App. Ct. 804, 806-807 (1997). In those cases the judges declined to give such an instruction.[2] Here the readily identifiable T-shirt was as much a link as physiognomy. The lighting conditions had been good, and Grace said he had between eight and fifteen seconds to study his assailant's face — a sufficient time if one counts it out. See *Commonwealth* v. *Hyatt, supra* at 818. There was no evidence whether Grace interacted on a daily basis with non-whites, a factor which might bear on how acutely someone observed the features of a person of another race. Defense counsel explored Grace's uncertainty about his identifications, a subject about which he was candid. For those reasons, we conclude the trial judge did not abuse his discretion in declining to give the cross-racial identification instruction.

It deserves mention, however, that the judge who, during the charge conference, first announced he would give a cross-racial identification instruction, was quick, once the Commonwealth objected, to place weight

---

[1]Trial counsel for Jean-Jacques had mailed a summons to Grace with her telephone number on it, and Grace returned that communication with a telephone call.

[2]In three other reported cases, the judges have not given a cross-racial identification instruction, and in each instance the refusal was not, on review, thought to be reversible error. See *Commonwealth* v. *Charles*, 397 Mass. 1, 8 (1986); *Commonwealth* v. *Horne*, 26 Mass. App. Ct. 996, 999 (1988); *Commonwealth* v. *Burgos*, 36 Mass. App. Ct. 903, 904 (1994).

on the circumstance that no Massachusetts case had yet required such an instruction. That is so, but the court in the *Hyatt* case, *supra* at 819, remarked that trial judges are not precluded from instructing a jury that they might "consider the fact of any cross-racial identification and whether the identification by a person of a different race from the defendant may be less reliable than identification by a person of the same race." In the *Engram* opinion, *supra* at 807-808, we restated that invitation and now say, once again, that such an instruction ought not to be the target for automatic rejection by either the government or a trial judge, or, put another way, a judge should consider a request for such an instruction with a measure of favorable inclination to grant it.

2. *Consciousness of guilt.* When booked at the police station, Jean-Jacques gave a false name. Evidence of that was properly received as consciousness of guilt. *Commonwealth* v. *Carrion*, 407 Mass. 263, 276-277 (1990). In charging the jury on the point, the judge failed to tell them that they were not to convict on the basis of consciousness of guilt alone. *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982). *Commonwealth* v. *Simmons*, 20 Mass. App. Ct. 366, 373 (1985). There was no objection. That Jean-Jacques gave a false name was a minor factor in the trial and was mentioned only fleetingly during the prosecution's closing argument. We do not think the judge's error in his instruction runs a substantial risk of a miscarriage of justice, the criterion of review we apply when a point on appeal was not raised at trial. Contrast *Commonwealth* v. *Rivera*, 23 Mass. App. Ct. 605, 609-610 (1987).

3. *Show-up instructrion.* In another point regarding the instructions that was not raised below, the defense complains that the judge did not include that component of the pattern *Rodriguez*[3] instruction which tells jurors that they may take into account that an identification made by picking a defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness. Here, the judge told the jury, "If the identification by the witness may have been influenced by circumstances under which the defendant was presented to that witness for identification, you should scrutinize the identification with great care." We think that alerted the jury about the one-on-one identification issue sufficiently to take that portion of the charge out of the category that might involve creation of a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Brewster*, 46 Mass. App. Ct. 746, 750-751 & n.4 (1999).

*Judgments affirmed.*

*Paul M. Koziell* for the defendant.

*Barbara F. Berenson*, Assistant District Attorney, for the Commonwealth.

---

[3]See *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979); *Commonwealth* v. *Cuffie*, 414 Mass. 632, 640 and Appendix (1993). See also *Commonwealth* v. *Pressley*, 390 Mass. 617, 620 (1983).