## S04A0392. HANCOCK v. THE STATE.
### (596 SE2d 127)

HUNSTEIN, Justice.

Merry Angela Hancock was convicted of murder in the shooting deaths of Helen Neal Hancock and Howard Brooks Hancock, the parents of her husband. The jury rejected verdicts of not guilty by reason of insanity or guilty but mentally ill. She appeals from the denial of her motion for a new trial.[1] Finding the evidence sufficient to support the verdict and no reversible error in the trial court's rulings, we affirm.

1. The jury was authorized to find that while appellant and her husband were in the process of divorcing, appellant lived in the marital residence owned by the victims. Also residing in the home were appellant's teenaged son Nelson and adult daughter Heather, along with Heather's boyfriend, David Palmer. Both Nelson and Heather testified regarding prior instances in which appellant had flown into a violent rage and assaulted them. On the morning of the crimes, appellant got into a heated argument with Heather. Nelson, after hearing appellant beg Heather to take a swing at her so appellant could shoot her, ran out of the house and caught the bus to his high school. Heather called 911 and then hung up the phone in an attempt to "fake [appellant] out" of her rage. Appellant threw the phone at Heather, hitting her and leaving a gash in the back of the head.

After being injured, Heather ran out of the house and contacted the victims. She met with them and decided to move out of the house. Heather returned to the house with three friends and although appellant was present, the daughter retrieved her belongings with-

---

[1] Helen and Howard Hancock were murdered on February 17, 2000. Appellant was indicted May 3, 2000 in Hall County on two counts each of murder, felony murder, aggravated assault and possession of a firearm during the commission of a felony. She was found guilty on all charges on July 18, 2002 and was sentenced to two life sentences and two five-year sentences on the firearm possession charges. Her motion for new trial, filed August 13, 2002 and amended February 26, 2003, was denied September 16, 2003. A notice of appeal was filed October 13, 2003. The appeal was docketed November 5, 2003 and was orally argued February 17, 2004.

out incident. Around 4:00 p.m. the victims came to the house and parked along the road in order to collect Nelson when he returned from school. David Palmer, who had left for work before the morning's argument, arrived at the house; he joined the victims in their van as they told him about the incident. He was inside the van when appellant walked up and began arguing with the victims over their plan to take Nelson. Palmer went into the house; when appellant arrived shortly thereafter, Palmer questioned her about the incident with Heather. Appellant claimed that Heather had "jumped in the way of" a plastic bottle she had thrown. When Palmer said he would talk to Heather about the incident, appellant began screaming about the victims "trying to send her to jail and take her kids." Refusing to listen to her screaming, Palmer went outside and sat down in the driveway. A few minutes later appellant started outside, doubled back to lock the door, then returned to walk past Palmer, commenting to him that he should get in the van because he was "leaving like [the victims] were." Appellant then walked to the driver's side of the van where Palmer heard appellant screaming again about the victims not taking Nelson. Witnesses passing by in vehicles on the road testified that they saw appellant arguing heatedly with the van occupants, twice "backhand" the male driver of the van, and then begin shooting into the van before leaving the scene and walking back up the driveway. Palmer, hearing the shots and seeing the glass of the van's passenger side window shatter, ran away. As he attempted to find a neighbor at home to call for help, he saw appellant driving off just as police, contacted by others, began to arrive.

Expert testimony established that the victims were killed by gunshot wounds to their heads fired by the Bryco .380-caliber pistol found in appellant's home. No weapons were found in the van. The location of the seven bullet casings recovered at the scene indicated that some of the shots were fired while the pistol was inside the van. Appellant was later apprehended at her mother's home. When police informed her of the murder charges, she first asked if the charges could be reduced and then asked if there could be a change of venue.

Appellant's defense was that she was not guilty by reason of insanity. All the mental health expert witnesses concurred that appellant has a mental illness because of her fixed bizarre delusion that she has two uteri ("uterus didelphys") and had involuntarily given birth to babies who were thereafter taken by the government. However, the State's expert opined that although appellant's thinking was bizarre when it was related to the uterus didelphys delusion, "in other aspects of [appellant's] life, she can perform, she can function, she can think." The State's expert testified that appellant's attack on the victims was not consistent with her delusion but rather was consistent with appellant's antisocial personality as manifested

by her history of uncontrolled episodes of violent rage against others.[2] Based upon matters detailed at trial, the State's expert opined that appellant understood the difference between right and wrong and was not compelled to act by her delusion when she shot the victims; that although appellant has a diagnosable mental illness, other than her delusion-related behavior appellant can think clearly but that her behavior is driven by her antisocial personality traits; and that appellant was malingering mental illness for the purposes of avoiding criminal responsibility for her actions.

The evidence adduced at trial was sufficient to enable a rational trier of fact to reject appellant's defense that she met the criteria of OCGA §§ 16-3-2 or 16-3-3 to support a verdict of not guilty by reason of insanity, see OCGA § 17-7-131 (b) (1) (C), and to determine that appellant's mental illness did not rise to the level under OCGA § 17-7-131 (a) (2) to support a verdict of guilty but mentally ill, see OCGA § 17-7-131 (b) (1) (D), but instead to find beyond a reasonable doubt that appellant was guilty of the charged crimes. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The transcript reveals that except for minor modifications and a slip of the tongue, the trial court gave verbatim the charges on insanity and guilty but mentally ill in the Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2nd ed.) Part 3 (EE 1-4 and 6),[3] including the charge tracking the mandatory language in OCGA

---

[2] In support of this opinion the State's expert pointed out, inter alia, that although appellant openly discussed her delusion regarding the uterus didelphys with family members, she had not mentioned any delusional belief that the victims were intending to kill her nor did she mention she acted in self-defense when she went to her mother's home after the killings; that appellant's claim she believed the victims were going to kill her was inconsistent with her behavior in voluntarily approaching the van twice and "backhanding" Mr. Hancock during their argument; likewise appellant's claim that David Palmer was a hitman was inconsistent with appellant's behavior around Palmer at the time of the crimes, i.e., following him alone into the house, speaking to him and walking directly past him while he sat outside in the driveway; and that appellant's claim that she failed to call for help after shooting the victims because she believed the police were part of the conspiracy was inconsistent with appellant's socially-appropriate behavior toward the police officer who responded to Heather's 911 call earlier the day of the crimes. The State's expert also noted that appellant had never previously reported experiencing auditory and visual hallucinations until appellant, in support of her self-defense claim, alleged that she heard Mr. Hancock ask his wife to hand him a gun and saw a gun in the van; and that appellant's knowledge of the legal system, as evidenced by her inquiry to police upon her arrest about whether the charges could be reduced and venue changed, along with appellant's pro se attempt in an earlier, unrelated criminal matter to overturn a guilty plea on the basis of her "impaired judgment" and her comment to the State's expert during evaluation that she "wanted an NGRI," meaning "not guilty by reason of insanity," indicated that appellant had an incentive to malinger mental illness.

[3] The trial court's charge from EE 6 was modified to eliminate reference to mental retardation. We note the charge as given is substantially similar to the insanity and mental illness instructions set forth in Volume II: Criminal Cases of the third edition of the Suggested Pattern Jury Instructions published in February 2003.

§ 17-7-131 (b) (3) (B) (jury shall be charged upon a verdict of guilty but mentally ill that the defendant would be "given over to the Department of Corrections or the Department of Human Resources, as the mental condition of the defendant may warrant"). Appellant contends the trial court erred when it refused to give her requested charge "clarifying" the effect of a verdict of guilty but mentally ill and that this error constitutes reversible error under *Moore v. State*, 217 Ga. App. 207 (1) (456 SE2d 708) (1995) and *Prophitt v. State*, 183 Ga. App. 332 (1) (358 SE2d 892) (1987). Those cases are distinguishable, however, in that the trial courts therein used alternative language to the charge set forth in OCGA § 17-7-131 (b) (3) (B). As the court in *Moore* noted, the Legislature made the statutory charge mandatory "to prevent courts from incorrectly summarizing the law and confusing the jury, as was the case in *Prophitt*, [supra]." Id. at 208 (1). We do not agree with appellant that the charge given by the trial court was ambiguous or confusing to the jury; rather, it clearly indicated to the jury who would have custody and control of appellant in the event the jury found her not guilty by reason of insanity or guilty but mentally ill. Because the charge given appropriately covered the applicable principles of law, we find no error in the trial court's refusal to give appellant's requested charge. See generally *Johnson v. State*, 276 Ga. 57 (3) (573 SE2d 362) (2002).

3. Appellant contends the trial court erred by allowing the State's expert to evaluate appellant after she had previously been evaluated by three other mental health experts, in the absence of any evidence adduced by the State to establish that the earlier evaluations were inadequate or erroneous. The record reveals that appellant was first seen by a psychologist who performed no forensic evaluation; she received her first forensic evaluations by two mental health professionals appointed by the trial court pursuant to OCGA § 17-7-130.1.[4] The State thereafter moved for additional evaluation of appellant by an expert chosen by the State pursuant to *Tolbert v. State*, 260 Ga. 527 (397 SE2d 439) (1990). The trial court granted the motion and additionally provided appellant with the opportunity to be evaluated again by an expert of her own choosing, an opportunity of which appellant took advantage. All five experts testified at trial.

While we agree with appellant that a trial court's discretion in ordering multiple psychological evaluations is not unlimited, we find no abuse of discretion under the facts present here. We recognized in *Tolbert*, supra, 260 Ga. at 528 (2) (b), that a court-appointed medical expert "cannot be classified as an agent of the state, but must be con-

---

[4] One professional evaluated appellant solely to determine her competency to stand trial; the other evaluated her to determine her criminal responsibility.

sidered as an independent and impartial witness." Accordingly, we held that consistent with the clear legislative intent of OCGA § 17-7-130.1, the State should have an equal opportunity with the defense to obtain the opinion of an independent and impartial mental health expert regarding the issues raised by an insanity defense. *Tolbert,* supra at 528 (2) (b) and (3). Contrary to appellant's argument, nothing in *Smith v. State,* 245 Ga. 44 (2) (262 SE2d 806) (1980) or *Finney v. State,* 253 Ga. 346 (1) (320 SE2d 147) (1984) requires the State to establish that a court-ordered evaluation was inadequate or erroneous in order to justify a request under *Tolbert* for a first forensic evaluation of a defendant by a State-selected expert.

4. The rule of sequestration was not violated by conversations between the State's expert and one of the defense expert witnesses that occurred prior to trial. See *Blankenship v. State,* 258 Ga. 43 (9) (365 SE2d 265) (1988) (rule not enforceable until presentation of evidence has begun). We find no reversible error to the extent appellant raises a claim of violation of the rule based on conversation during the trial between the State's expert witness and other persons (who did not testify at trial), during which they assessed the performance of a defense expert who did testify. The purpose of the rule of sequestration is to ensure that the testimony of a witness who has not yet testified is not influenced by that of another witness. OCGA § 24-9-61; *Childress v. State,* 266 Ga. 425, 431 (2) (467 SE2d 865) (1996). The evidence supports the trial court's holding that the alleged conversation did not influence the testimony of the State's expert, which was based on her own report made months before trial.

5. Our review of the record reveals that appellant concurred or acquiesced in the trial court's pre-trial ruling that the State's expert could discuss prior incidents of violence reportedly committed by appellant as the basis for the expert's professional opinion regarding appellant's antisocial personality traits, even though the trial court denied the State's motion made in compliance with USCR 31.1 et seq. to introduce these incidents as prior acts. At trial, appellant raised no objection when the State's expert testified about the prior incidents. Thus, appellant has waived any objection to the evidence. See generally *Payne v. State,* 273 Ga. 317 (5) (540 SE2d 191) (2001) (party cannot complain of ruling his own conduct procured or aided in causing). Furthermore, in light of the extensive testimony by defense experts discussing appellant's past violent acts, appellant cannot show how she was harmed by admission of the challenged evidence. See *Malone v. State,* 219 Ga. App. 728 (3) (466 SE2d 645) (1995) (purportedly improper character evidence deemed harmless because it was cumulative of other evidence before the jury).

6. Appellant contends she was entitled to a new trial because a fixed podium in the courtroom obstructed her view of the entire jury

box. It is uncontroverted that appellant was physically present throughout the proceedings, compare *Hanifa v. State*, 269 Ga. 797 (6) (505 SE2d 731) (1998), and that neither her view nor the jury's view of the witnesses against appellant was impeded so as to infringe upon her confrontation rights. See *Coy v. Iowa*, 487 U. S. 1012 (II) (108 SC 2798, 101 LE2d 857) (1988). Moreover, appellant made no objection at trial to her alleged inability to see all of the jurors all of the time.[5] See *Holsey v. State*, 271 Ga. 856 (5) (524 SE2d 473) (1999) and *Hanifa*, supra at 807 (right under Art. I, Sec. I, Par. XII of Georgia Constitution to be present at all aspects of trial is subject to waiver by acquiescence). Accordingly, we find no merit in appellant's contention.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 27, 2004 —
RECONSIDERATION DENIED MAY 20, 2004.

*Fox, Chandler, Homans, Hicks & McKinnon, Joseph A. Homans, Carey, Jarrard & Walker, Lucy K. Henry,* for appellant.

*Jason Deal, District Attorney, Lee Darragh, Assistant District Attorney, Thurbert E. Baker, Attorney General, Frank M. Gaither, Jr., Assistant Attorney General,* for appellee.

---

[5] We note that no juror complained to the trial court about any inability to see appellant.