## A04A2299. MORITA v. THE STATE.
### (606 SE2d 595)

ANDREWS, Presiding Judge.

Wayne Morita appeals after a jury convicted him of kidnapping with bodily injury, rape, aggravated sodomy, aggravated child molestation, aggravated assault, and cruelty to children in the first degree.

Morita contends the evidence was insufficient to support the verdict, the trial court erred in admitting similar transaction evidence, erred in refusing to give a requested jury charge on DNA, and erred in refusing to grant a mistrial after a witness stated that Morita was seeing a psychiatrist. For the following reasons, we conclude there was no reversible error and affirm.

The evidence at trial, taken in the light most favorable to the verdict, was as follows. On the day of the attack, Morita enticed the victim, K. M., who was five years of age at the time, into his SUV and drove her to some woods approximately two miles away. Morita raped and sodomized the victim, then strangled her and left her for dead under a pile of leaves and twigs. The victim regained consciousness and walked out of the woods. A man whose truck had gotten stuck on a gravel road saw her and radioed for help. K. M. was bleeding from the mouth and vagina and was naked. The doctor who treated K. M. testified that she had a long, deep vaginal tear, several anal tears, and injuries consistent with strangulation.

K. M. was able to describe the man who attacked her, and police circulated a composite sketch from her description. After seeing the sketch, Morita's former boss called police and gave them Morita's name.

The State also introduced DNA evidence. DNA testing showed that the two profiles on one of the rectal swabs taken matched that of the victim and Morita. The State's expert testified that the frequency of the DNA that was shared between Morita and the sample recovered from the rectal swab was approximately one in two billion in the Caucasian population.

There was also evidence that, when questioned by police as to his whereabouts on the day of the attack, Morita claimed he had been working. When investigators said they would check his time card, Morita told them the time cards would have been destroyed. In fact, his time card was not destroyed and showed that Morita did not work that day. The State introduced pictures showing scratch marks on Morita's arms and wrists and also pictures of his vehicle, a dark Ford Bronco which matched the description given by the victim.

The State also introduced similar transaction evidence. The victim in that case, S. S., was 11 years of age at the time and lived in the same apartment complex as Morita. One night when the victim was sleeping, Morita broke into her apartment and went into her bedroom. He rubbed her breasts and vagina and, after she awoke, put his hand over her mouth and took her from the apartment. Morita then took her into the woods and tied her to a chair. Morita left and then came back but the victim had gotten free and had recognized

him. Morita admitted to kidnapping the victim and also stated that he thought about hitting her with a rock as she walked away but did not do so.

1. The evidence was sufficient to support the verdict.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict and the [defendant] no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) [(1991)]; *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381) [(1994)].

*Dolphus v. State*, 218 Ga. App. 565, 566 (462 SE2d 453) (1995).

2. Morita also claims the trial court erred in admitting the similar transaction evidence. The law in Georgia is that in order for evidence of independent offenses or acts to be admitted into evidence, a hearing must be held pursuant to Uniform Superior Court Rule 31.3 (B). At that hearing, the State must show that (1) it seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility; (2) there is sufficient evidence to establish that the accused committed the independent offense or act; and (3) there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991).

In this case, it is undisputed that Morita committed the similar transaction offense. Further, the State sought to introduce the evidence to show motive, bent of mind, modus·operandi, and the lustful disposition of the defendant.

But, Morita argues that the instances were not sufficiently similar and the prejudicial effect outweighed any probative value, and served no purpose other than to show a general criminal propensity. We disagree.

The victims in both cases were children, they were both kidnapped and taken into the woods and they were both sexually molested. Because the admissibility of similar transaction evidence is liberally construed in the area of sexual offenses, "the sexual molestation of young children or teenagers, regardless of the type of act, is sufficiently similar to be admissible as similar transaction evidence."

*Williams v. State*, 263 Ga. App. 22, 24 (587 SE2d 187) (2003). The trial court did not abuse its discretion in admitting evidence of this similar transaction.

3. Next, Morita claims the trial court erred in refusing to give his requested jury charge on DNA evidence. This charge provided:

> Certain evidence of DNA comparison has been admitted by the court for your possible consideration. DNA comparison is opinion evidence and is dependent upon the credibility (believability) and accuracy of the expert witness(es) called for that purpose as well as the following factors: (a) The validity of the theory of DNA comparison; (b) the credibility of the witness who performs other necessary functions in making the comparison; and (c) the accuracy of procedures in identifying, preserving, recording, and maintaining integrity of the physical evidence; all of which are questions for the jury. DNA evidence is also governed by the rules [of] circumstantial evidence. A verdict of guilty may not rest upon DNA comparison alone, unless you are satisfied beyond a reasonable doubt that DNA left by the accused was in fact found, and that it could only have been left by the accused at the time of the commission of the crime, and that such DNA comparison under all the facts and circumstances of the case is sufficient to satisfy your mind of the guilt of the accused, to the exclusion of any other reasonable hypothesis, and beyond a reasonable doubt.

Morita cites to no authority on point supporting his claim that it was error to refuse to give this charge and we find none.

A refusal to give a requested jury charge is not error unless the request is entirely correct and accurate; is adjusted to the pleadings, law, and evidence; and is not otherwise covered in the general charge. *Hefner v. Maiorana*, 259 Ga. App. 176, 177 (576 SE2d 580) (2003).

Here, the trial court charged the jury on expert witnesses and circumstantial evidence. The court also instructed the jury that it must exclude every reasonable theory of innocence before it could convict Morita on circumstantial evidence. Therefore, because the charge given appropriately covered the applicable principles of law, we find no error in the trial court's refusal to give appellant's requested charge. See *Hancock v. State*, 277 Ga. 835, 838 (596 SE2d 127) (2004).

4. In his last enumeration of error, Morita contends the trial court erred in refusing to grant his motion for mistrial after a witness

testified that Morita was seeing a psychiatrist. He claims the testimony was highly prejudicial and the curative instruction was not sufficient to undo the harm.

The statement occurred when a witness was questioned about the composite sketch and answered: "It looked like Morita, not in the sense that I knew him, but it looked like I had seen him before. I'd seen him before he worked at Plaza Research. He was seeing a psychiatrist in the same office that he worked at." After this statement, defense counsel objected and asked for a mistrial. The trial court did not grant a mistrial but instead gave curative instructions to the jury, telling them to "disregard the last statement made by the witness. It was not responsive, and it was a matter of which he had absolutely no knowledge of to testify. You will disregard it in all manners whatsoever."

Morita cites to no authority in support of his contention that this remark required a mistrial, and we find none. "Where a witness injects the defendant's character into issue by referring to a prior act of misconduct in an answer not responsive to the question asked and the trial court instructs the jury to disregard the unresponsive answer, it is not error for the trial court to deny a motion for mistrial." *Fulton v. State*, 278 Ga. 58, 62 (597 SE2d 396) (2004); *Woods v. State*, 233 Ga. 495, 498 (212 SE2d 322) (1975). In this instance, the State did not intentionally elicit this information and stating that someone is seeing a psychiatrist does not necessarily inject one's character into evidence. See *Hinely v. State*, 275 Ga. 777, 782 (573 SE2d 66) (2002). Even assuming the comment did improperly put Morita's character into evidence, the curative instruction was sufficient. *Fulton*, supra.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED NOVEMBER 8, 2004.

*Robert H. Alexander III*, for appellant.
*Patrick H. Head, District Attorney, Amy H. McChesney, Russell J. Parker, Frances D. Hakes, Assistant District Attorneys*, for appellee.