### A10A1501. WALLACE v. THE STATE.
### A10A1506. JONES v. THE STATE.

(701 SE2d 554)

PHIPPS, Presiding Judge.

Trevon Bernard Wallace and Falbert Lee Jones were tried jointly for burglary and armed robbery; Wallace was convicted of two counts of burglary, and Jones was convicted of two counts of burglary and one count of armed robbery. In Case No. A10A1501, Wallace appeals, arguing that the court erred in failing to give his requested jury charge on the reliability of cross-racial eyewitness identification. In Case No. A10A1506, Jones appeals, also arguing that the court erred in failing to give the requested jury charge, and arguing that he received ineffective assistance of counsel. Finding no merit in these claims of error, we affirm both cases.

The evidence showed that on April 11, 2008, police officers

responded to a burglary call at a Gwinnett County residence. The resident had come home from work to find several items, including a jar of coins, missing.

On April 30, 2008, police officers responded to a robbery call at another Gwinnett County residence. Earlier that morning, the resident had answered a knock on his door to two men, who forced their way inside where they were joined by a third man. The men were not wearing masks. One of the men, whom the resident described as being short, pointed a gun at him. The other man asked the resident, "Where's the change?" The men made the resident lie on the floor, and they tied his wrists and ankles. They took from the residence, among other things, a coin collection that included rolls of collectible half-dollar coins.

Police officers notified a supermarket in the area, which had a coin counting machine, about the stolen coins. On May 2, 2008, one of the supermarket's managers observed three men putting loose change in the counting machine, after which one of the men brought the receipt from the machine and four rolls of half-dollar coins to the front desk. The manager brought the coins to the attention of another employee, who recognized them as collectible coins. The manager also watched the men through the store's closed circuit surveillance system, which produced a recording of the events that later was played to the jury at trial. And the manager notified the police. The responding officer encountered Wallace and Jones outside the store; he asked them about the coins, obtained identification from them, and took their photographs. From these photographs, the supermarket manager identified Wallace and Jones as two of the men who brought the coins to the store.

A few days later, Wallace was again seen at the supermarket using the coin machine. A supermarket employee notified the police, and officers stopped Wallace and another person shortly thereafter walking near the supermarket; Wallace was carrying a bag of half-dollar coins. When, in response to the officer's questions, Wallace gave two different dates of birth, the officer arrested him for providing false information and seized the bag of coins. While in custody, Wallace admitted in an interview that he had been involved in the April 11 burglary.

Officers executed a search warrant upon Wallace's residence, where they found items matching those taken in the April 11 and April 30 incidents, including coins in collector's cases and a jar of coins. While executing the warrant, officers found Jones at Wallace's residence. Jones was taken into custody and interviewed, during which he first admitted to involvement in both the April 11 and April 30 incidents but then disclaimed any involvement in the April 30 robbery.

On May 8, 2008, the robbery victim identified Wallace and Jones from photographic lineups as two of the men who had robbed him, and Jones as the man who had pointed the gun at him. At trial, he again identified Wallace and Jones as the perpetrators of the robbery. Evidence was presented that some of the coins found at Wallace's residence came from the collection of the robbery victim. Evidence also was presented that the collectible coins that Wallace and Jones brought to the supermarket were similar to coins in the robbery victim's collection.

### Case No. A10A1501

1. Wallace's counsel argued to the jury that Wallace was not involved in the April 30 robbery and that the victim in that incident, who was of a different race than Wallace, had misidentified him. Wallace claims that the court erred in refusing to give his requested jury charge on the reliability of cross-racial eyewitness identification.

The charge sought by Wallace, which he based on a model jury instruction proposed by the American Bar Association's Criminal Justice Section,[1] provided as follows:

> In this case, the defendants are of a different race from that of a witness who has identified him [sic]. You may consider, if you think it is appropriate to do so, whether the fact that a defendant is of a different race from that of the witness has affected the accuracy of the witness's original perception or the accuracy of a later identification. You should consider that in ordinary human experience, some people may have greater difficulty in accurately identifying members of a different race than they do in identifying members of their own race. You may also consider whether there are other factors present in this case which overcome any such difficulty of identification.

"A refusal to give a requested jury charge is not error unless the request is entirely correct and accurate; is adjusted to the pleadings, law, and evidence; and is not otherwise covered in the general charge."[2] We review the trial court's refusal for abuse of discretion.[3] Here, the trial court gave the jury Georgia's pattern charge on

---

[1] See "Recommended Instruction of the ABA Criminal Justice Section's Committee on Rules of Criminal Procedure, Evidence, and Police Practices," within American Bar Association Criminal Justice Section Report to House of Delegates, August 2008.

[2] *Morita v. State*, 270 Ga. App. 372, 375 (3) (606 SE2d 595) (2004) (citation omitted); see *Walker v. State*, 282 Ga. 406, 408 (2) (651 SE2d 12) (2007).

[3] See *Skaggs-Ferrell v. State*, 266 Ga. App. 248, 252-253 (7) (596 SE2d 743) (2004).

assessing the reliability of eyewitness testimony.[4] That charge instructed the jury to consider the possibility of mistaken identity and whether the witness's identification may have been influenced by factors other than the view that the witness claimed to have.[5] The trial court also charged the jury on the state's burden to prove all elements of the charged offense beyond a reasonable doubt. The jury thus was informed that it was required to determine whether the eyewitness identification was sufficiently reliable to help satisfy the state's burden of proof that Wallace was the perpetrator of the alleged offenses.

Wallace points to no Georgia authority that required the trial court to give a more specific charge on assessing the reliability of a cross-racial identification.[6] And opinions from other jurisdictions, cited by Wallace, do not convince us that the court erred in refusing to give Wallace's requested charge. The decision in *Utah v. Long*[7] concerned the trial court's refusal to give *any* instruction on the reliability of eyewitness identification evidence and noted that the trial court and counsel should have some latitude in formulating a charge on the issue appropriate to a given case.[8] Similarly, the decisions in *Massachusetts v. Hyatt*[9] and *Massachusetts v. Engram*[10] both stressed that whether to include a charge specifically addressing cross-racial identification was within the trial court's discretion.[11] And although the court in *New Jersey v. Cromedy*[12] held that the trial court erred in refusing to give a defendant's requested charge on cross-racial identification, that court cautioned that "unrestricted use of cross-racial identification instructions could be counter-productive" and that a "cross-racial instruction should be given only when, as in [that] case, identification is a critical issue in the case, and an eyewitness's cross-racial identification is not corroborated by other evidence giving it independent reliability."[13] Here, other evidence corroborated the robbery victim's identification

---

[4] See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.35.10 (4th ed. 2007).

[5] Id.

[6] Wallace cites generally to *Brodes v. State*, 279 Ga. 435, 442 (614 SE2d 766) (2005), in which the Supreme Court of Georgia discussed the potential deficiencies of eyewitness identification evidence and held that it was error for a trial court to instruct the jury that it could consider a witness's level of certainty in his or her identification.

[7] 721 P2d 483 (Utah 1986).

[8] Id. at 492.

[9] 647 NE2d 1168 (Mass. 1995).

[10] 686 NE2d 1080 (Mass. App. 1997).

[11] See *Hyatt*, supra at 1171 (2); *Engram*, supra at 1081-1082 (1).

[12] 727 A2d 457 (N.J. 1999).

[13] Id. at 467.

of Wallace as a participant in the April 30 robbery, namely that shortly thereafter Wallace was involved in an attempt to cash in collectible coins resembling those stolen, that he later was found in possession of more such coins, and that coins identified as belonging to the victim were discovered at Wallace's house.

We find, in light of the corroborating evidence in this case and the fact that the final charge instructed the jury to consider the possibility of mistaken identification, that the trial court did not abuse its discretion in refusing to give Wallace's requested charge.[14]

## Case No. A10A1506

2. Jones also requested and was denied the jury charge on cross-racial eyewitness identification. The state presented evidence corroborating the identification of Jones as one of the perpetrators of the armed robbery, namely his involvement in redeeming coins resembling those stolen from the robbery victim, his presence when coins identified as belonging to the robbery victim were discovered, and his custodial statement that he had participated in the April 30 robbery. For the same reasons set forth in Division 1, we find no merit in Jones's claim that the trial court erred in failing to give this charge.

3. Jones contends that his trial counsel provided ineffective assistance by failing to adequately investigate and prepare his case for trial and by failing to serve the state with a notice of intent to present an alibi defense or to call witnesses in support of such defense, and that the trial court erred in denying his motion for new trial on this ground. To prevail on this claim, Jones

> must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. On appeal, this Court accepts the trial court's findings of fact, unless they are clearly erroneous. However, the trial court's legal conclusions are reviewed de novo.[15]

(a) The record does not support Jones's contention that his trial counsel committed professional error because he did not adequately investigate and prepare the case for trial.

Jones's trial counsel testified at the motion for new trial hearing

---

[14] See generally *Petty v. State*, 283 Ga. 268, 271 (4), (658 SE2d 599) (2008); *Hancock v. State*, 277 Ga. 835, 838 (2) (596 SE2d 127) (2004); *Parker v. State*, 270 Ga. 256, 258 (2) (507 SE2d 744) (1998).

[15] *Wilson v. State*, 286 Ga. 141, 143 (3) (686 SE2d 104) (2009) (citations and punctuation omitted).

that he began representing Jones at his preliminary hearing. He met with Jones; reviewed the evidence with him; conducted discovery, which he "went through . . . bit-by-bit" with Jones; discussed with Jones the defense strategy, including challenges presented by Jones's custodial statement and by the image of him cashing in coins on the supermarket surveillance video; and considered ways to exploit possible flaws in the eyewitness identification.

Nevertheless, Jones argues that his counsel was unprepared because counsel failed "to conduct witness interviews, consult an identification expert, or otherwise adequately prepare his defense." Jones did not introduce any evidence at the hearing on his motion for new trial, however, on whether his counsel conducted any witness interviews. And regarding the eyewitness identification expert, trial counsel explained at the hearing that, although he discussed the issue of cross-racial identification with Wallace's counsel, he had determined that the issue was not significant to Jones's case. He challenged the identification instead by highlighting a significant discrepancy between the eyewitness's description of the perpetrator's alleged height and Jones's actual height. He testified at the hearing that the jurors had the chance to observe Jones's actual height at trial and that he believed that no expert was required to render an opinion on the height discrepancy.

> The standard regarding ineffective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight, but counsel rendering reasonably effective assistance. In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy.[16]

Moreover, such after the fact disagreements about trial counsel's approach to the case do not amount to a showing of ineffective assistance of trial counsel.[17] The evidence supported the trial court's conclusion that Jones failed to carry his burden of showing deficient performance related to his counsel's investigation of the case and preparation for trial.[18]

(b) Jones complains that his counsel failed to serve the state with notice of an alibi defense and failed to call his mother and sister as alibi witnesses. These relatives had told trial counsel that they had

---

[16] *Lewis v. State*, 279 Ga. 69, 75 (9) (608 SE2d 602) (2005) (punctuation and footnote omitted).

[17] *Reed v. State*, 285 Ga. 64, 66 (6) (673 SE2d 246) (2009).

[18] See id. at 66-67.

seen Jones at his home on April 30. But Jones never represented to trial counsel that he was at home when the crime occurred, nor did he ask to pursue an alibi defense. Trial counsel testified that he did not pursue an alibi defense through these witnesses because he did not believe their testimony was credible based on the evidence in the case, including Jones's custodial statement first admitting to and then recanting his involvement in the robbery, and he thought that having Jones's family members testify in this manner would harm the defense.

In *Upton v. Parks*,[19] the Supreme Court of Georgia held that a defendant failed to establish deficient performance based on his counsel's decision not to call alibi witnesses whose credibility counsel doubted. Noting that "[d]ecisions based on counsel's reasonable trial strategy do not constitute deficient performance," the Court held that counsel's testimony demonstrated that the decision not to call the alibi witnesses "was a fully considered and well reasoned decision under the circumstances."[20] Jones argues that his case is distinguishable from *Upton* because one could infer from the evidence that his trial counsel did not consult with him about the decision not to call the alibi witnesses or to pursue an alibi defense. Assuming, without deciding, that a failure to so consult would require a different result under *Upton*, the trial court here found, based on the evidence at the motion for new trial hearing, that counsel *had* discussed with Jones the strategic decision not to call the alibi witnesses. Although the evidence on this point could be construed in different ways, Jones has not met his burden of showing by the record that the court's finding was clearly erroneous.[21] The evidence supported the trial court's conclusion that Jones failed to carry his burden of showing deficient performance related to counsel's decision not to call the alibi witnesses or to serve the state with notice of intent to present an alibi defense.[22]

*Judgments affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 16, 2010.

*Sharon L. Hopkins*, for appellant (case no. A10A1501).
*Maryann F. Blend*, for appellant (case no. A10A1506).

[19] 284 Ga. 254 (664 SE2d 196) (2008).
[20] Id. at 257-258 (2).
[21] See *Wilson*, supra.
[22] See *Upton*, supra at 258 (2).

*Daniel J. Porter, District Attorney, Tracie H. Cason, Assistant District Attorney*, for appellee.